CARLETON B. NICHOLLS, JR., *vs.* MAYOR AND SCHOOL COMMITTEE OF LYNN.

Suffolk. December 4, 1935. — March 30, 1937.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*School and School Committee. Constitutional Law,* Public education, Religion, Due process of law. *Words,* "Religion."

A rule of a school committee requiring the salute to the flag and pledge of allegiance in public schools, and their action in expelling a pupil for refusal to conform to the rule, were within the authority given by G. L. (Ter. Ed.) c. 71, § 37; § 69, as amended by St. 1935, c. 258.

The provisions of the Constitution of this Commonwealth relating to freedom of religion, and the rights secured by the Federal Constitution and its Amendments, were not violated by St. 1935, c. 258, amending G. L. (Ter. Ed.) c. 71, § 69, requiring the salute to the flag and the pledge of allegiance in public schools, nor by a school committee rule made thereunder.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on October 21, 1935.

The case was reported by *Lummus,* J., for determination by the full court.

*J. P. Roberts,* (*O. R. Moyle* with him,) for the petitioner.

*P. F. Shanahan,* City Solicitor, for the respondents.

RUGG, C.J. This petition for a writ of mandamus was submitted without evidence upon agreement that the facts stated in the petition and answer are taken to be true, the answer to control in case of inconsistencies. The single justice reported the case without decision with the statement that he should not exercise his discretion against the issuance of the writ if in other respects the petitioner was entitled to it. The object of this petition is to secure

reinstatement as a pupil in a public school from which the petitioner has been expelled.

The essential facts are these: The petitioner is about eight years old, a resident of Lynn, and in his third year as a pupil in the public schools of that city. During all this time and for many years theretofore, there was in effect a rule as to the conduct of the schools in Lynn of this tenor: "Rule 18. Salute To The Flag. — The following salute to the flag shall be given in every school at least once a week and at such other times as occasion may warrant: I pledge allegiance to the Flag of the United States of America and to the Republic for which it stands, one Nation indivisible, with liberty and justice for all." During his first two years in school, the petitioner joined with his teachers and room classmates in the salute to the flag and the recitation of the pledge of allegiance. After the opening of the school in 1935, it was observed that the petitioner, while standing during the salute and the recitation of the pledge, was otherwise taking no part therein. Upon inquiry it was said by the petitioner and his father that the petitioner would not take part in the ceremony "because he was being called upon to adore the flag and to bow down to the flag and that according to his religious views, he could only adore and bow down to Jehovah." Courteous requests by the teacher and principal of the school failed to change the decision of the petitioner not to participate in the ceremony. On September 30, 1935, there was repeated a refusal by the petitioner to join in the salute to the flag and the pledge of allegiance as a part of the opening exercises of the school, but he remained seated and refused to rise. The father of the petitioner was present at the time. After due notice to the petitioner and his father, a hearing was held before the respondents on October 8, 1935, on the question why the petitioner should not be expelled from school because of his conduct. The father was present and was represented by counsel, who made an explanation of the reasons for the refusal of the petitioner to salute the flag and to recite the pledge of allegiance in that they constituted an act of adoring and

of bowing down to the flag, which is contrary to the religious beliefs of the petitioner. The respondents as members of the school committee of Lynn then voted to exclude the petitioner from attending the Lynn public schools "until he, of his own free will, shall be willing to subscribe to the laws of the Lynn School Committee and Commonwealth of Massachusetts." This petition was then seasonably brought.

By G. L. (Ter. Ed.) c. 71, § 37, the school committee is given general charge of all the public schools in Lynn and is authorized to make regulations as to attendance therein. In *Leonard* v. *School Committee of Springfield*, 241 Mass. 325, 329, 330, it was said: "The school committee is an independent body, entrusted by law with broad powers, important duties and large discretion . . . The school committee may make all reasonable rules and regulations for the government, discipline and management of the schools under their charge." In holding that a child of immoral character might be excluded from the public schools, it was said in *Sherman* v. *Charlestown*, 8 Cush. 160, 167, that "the whole tone and tenor of the laws demonstrate, that it was the intention of the legislature to make the public schools a system of moral training, as well as seminaries of learning." The discipline of the classroom may be maintained. *Hodgkins* v. *Rockport*, 105 Mass. 475. Pupils of such intellectual capacity and weakness of mind as to interfere with the progress of others may be excluded. *Watson* v. *Cambridge*, 157 Mass. 561. Rules to promote health may be enforced. *Hammond* v. *Hyde Park*, 195 Mass. 29. Secret societies may be suppressed. *Antell* v. *Stokes*, 287 Mass. 103. The discretion of the school committee was diminished by St. 1935, c. 258, amending G. L. (Ter. Ed.) c. 71, § 69. It was thereby enacted that the school committee shall provide flags for each schoolhouse under its control and that a flag of the United States "shall be displayed in each assembly hall or other room in each such schoolhouse where the opening exercises on each school day are held. Each teacher shall cause the pupils under his charge to salute the flag and recite in unison with him at said opening exercises at least once

each week the 'Pledge of Allegiance to the Flag.'"   Failure
to comply with this mandate by the school committee
or by a teacher is made punishable by fine.   No penalty
is imposed on pupils for refusing to participate in the
ceremony.   The respondents are required to cause to be
given instruction in the public schools in American history
and civics, the Constitution of the United States, and the
duties of citizenship.   All instructors of youth are required
to "exert their best endeavors to impress on the minds of
children and youth committed to their care and instruction
the principles of piety and justice and a sacred regard for
truth, love of their country, humanity and universal benevo-
lence . . . ."   G. L. (Ter. Ed.) c. 71, §§ 1, 2, 30.

The general rule of the school committee of Lynn, already
quoted, is within the power conferred by G. L. (Ter. Ed.)
c. 71, § 37, and is expressly authorized by St. 1935, c. 258.
The latter statute established no penalty for a disobedient
pupil, but is directed to the school committee and to the
teacher.   Power to enforce the rule is implied in the grant
of power to establish it.   It necessarily follows that, if said
c. 258 and the rule are valid, the school committee was
acting within its jurisdiction in excluding the petitioner
from attending school.   *Antell* v. *Stokes*, 287 Mass. 103.
*Sherman* v. *Charlestown*, 8 Cush. 160, 164.   *Hodgkins* v.
*Rockport*, 105 Mass. 475.   *Hammond* v. *Hyde Park*, 195
Mass. 29.   *Watson* v. *Cambridge*, 157 Mass. 561.   The
rigidity of this rule extends no latitude to pupils who refuse
to obey it because of religious objections.   Said c. 258 is
clear in its command that "Each teacher shall cause the
pupils under his charge to salute the flag and recite in
unison with him" the pledge of allegiance.

The public obligation to provide for general education
is imposed by c. 5, § 2, of the Constitution of this Common-
wealth in these impressive words: "Wisdom, and knowledge,
as well as virtue, diffused generally among the body of the
people, being necessary for the preservation of their rights
and liberties; and as these depend on spreading the oppor-
tunities and advantages of education in the various parts of
the country, and among the different orders of the people,

it shall be the duty of legislatures and magistrates, in all future periods of this commonwealth, to cherish the interests of literature and the sciences, and all seminaries of them; especially the university at Cambridge, public schools and grammar schools in the towns; to encourage private societies and public institutions, rewards and immunities, for the promotion of agriculture, arts, sciences, commerce, trades, manufactures, and a natural history of the country; to countenance and inculcate the principles of humanity and general benevolence, public and private charity, industry and frugality, honesty and punctuality in their dealings; sincerity, good humor, and all social affections, and generous sentiments, among the people." In the performance of the obligation thus imposed on the Commonwealth, it seems to us within the competency of the General Court to enact a statute like c. 258, requiring the flag salute and the pledge of allegiance. That is a ceremony clearly designed to inculcate patriotism and to instill a recognition of the blessings conferred by orderly government under the Constitutions of the State and nation. The study of those instruments is a proper subject for instruction in the public schools. It is plain that the Republic and the State undertake to establish liberty and to provide justice for all within their borders in accordance with standing laws. The flag is a symbol of those aims of government. It is important for all who attend the public schools to know these facts and to appreciate these advantages. An understanding of these matters enables citizens to comprehend and to assert their rights and to seek and obtain their safety and happiness.

As justification for his conduct, the petitioner appeals to art. 2 of the Declaration of Rights of the Constitution of this Commonwealth. It is there provided that "no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship." He invokes, also, § 1 of art. 18 of the Amendments to the Constitution, as found in art. 46 of the

Amendments: "No law shall be passed prohibiting the free exercise of religion." He further relies on G. L. (Ter. Ed.) c. 76, § 5, to the effect that "No child shall be excluded from a public school of any town on account of race, color or religion."

Neither the Constitution of this Commonwealth nor that of the United States contains any definition of religion. *Reynolds* v. *United States*, 98 U. S. 145, 162. Nevertheless, a deep reverence for religion permeates several parts of the Constitution of this Commonwealth. That Constitution guarantees "absolute freedom as to religious belief and liberty unrestrained as to religious practices, subject only to the conditions that the public peace must not be disturbed nor others obstructed in their religious worship or the general obligations of good citizenship violated." *Opinion of the Justices*, 214 Mass. 599, 601.

In *Davis* v. *Beason*, 133 U. S. 333, 342, it was said: "The term 'religion' has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will. . . . With man's relations to his Maker and the obligations he may think they impose, and the manner in which an expression shall be made by him of his belief on those subjects, no interferences can be permitted, provided always the laws of society, designed to secure its peace and prosperity, and the morals of its people, are not interfered with." The flag salute and pledge of allegiance here in question do not in any just sense relate to religion. They are not observances which are religious in nature. They do not concern the views of any one as to his Creator. They do not touch upon his relations with his Maker. They impose no obligations as to religious worship. They are wholly patriotic in design and purpose.

The petitioner has made no disturbance in school and has simply stood mute during the ceremony of flag salute and pledge of allegiance, except that he remained seated on the single occasion on September 30, 1935, when his father was present. He refused to recognize the rule. It is assumed that the statement of beliefs of the petitioner

made by him is genuine and true and constitutes the ground of his conduct.

It has been assumed by both sides in the argument of the case at bar that the petitioner and his parents belong to the group known as "Jehovah's Witnesses." A member of that group, as stated in the brief of the petitioner, through a literal reading of the Bible, and especially of the first two Commandments as found in Exodus XX, entertains the belief that he "must express reverence to God alone and not to the flag, which is not the symbol of God." According to his belief, a salutation is equivalent to an act of reverence or adoration, or idolatry, and in violation of the Commandments of Scripture. The pledge of allegiance to the flag, as set forth in the rule of the school committee and referred to in said c. 258, is an acknowledgment of sovereignty, a promise of obedience, a recognition of authority above the will of the individual, to be respected and obeyed. It has nothing to do with religion.

The salute and pledge do not go beyond that which, according to generally recognized principles, is due to government. There is nothing in the salute or the pledge of allegiance which constitutes an act of idolatry, or which approaches to any religious observance. It does not in any reasonable sense hurt, molest, or restrain a human being in respect to "worshipping God" within the meaning of words in the Constitution. The rule and the statute are well within the competency of legislative authority. They exact nothing in opposition to religion. They are directed to a justifiable end in the conduct of education in the public schools. The practice of the petitioner was in contravention of them. It was said in *Reynolds* v. *United States*, 98 U. S. 145, 166: "Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices." In *Fraina* v. *United States*, 255 Fed. 28, 36, the statement occurs: "the most profound religious conviction that compliance with statute is wrong will not by law save any one from conviction . . . for violating that statute." In *Spiller* v. *Woburn*, 12 Allen, 127, a pupil sought damages

for her alleged illegal expulsion from school. A rule had been passed that the schools should be opened each morning with reading from the Bible and prayer, and that during the prayer the scholars should bow their heads; with a proviso that any pupil whose parent so requested should be excused from taking part in the ceremony. The father of the plaintiff refused to make such request, but instructed her to refuse to bow her head. As a result, she was expelled from school. Judgment was rendered for the defendant and the rule was upheld as a reasonable exercise of the power of the school committee. In the opinion, at page 129, it was stated: "We do not mean to say that it would be competent for a school committee to pass an order or regulation requiring pupils to conform to any religious rite or observance, or to go through with any religious forms or ceremonies, which were inconsistent with or contrary to their religious convictions or conscientious scruples. . . . But we are unable to see that the regulation with which the plaintiff was required to comply can be justly said to fall within this category."

In *Hamilton* v. *Regents of the University of California*, 293 U. S. 245, relief was sought against refusal to allow citizens to attend a State university except upon condition of taking military training, to which objection was made on religious and conscientious grounds. It was said at pages 261, 262: "Appellants assert — unquestionably in good faith — that all war, preparation for war, and the training required by the university, are repugnant to the tenets and discipline of their church, to their religion and to their consciences. . . . There need be no attempt to enumerate or comprehensively to define what is included in the 'liberty' protected by the due process clause. Undoubtedly it does include the right to entertain the beliefs, to adhere to the principles and to teach the doctrines on which these students base their objections to the order prescribing military training. . . . They are seeking education offered by the State and at the same time insisting that they be excluded from the prescribed course solely upon grounds of their religious beliefs and conscientious objections to war, preparation for

war and military education. Taken on the basis of the facts alleged in the petition, appellants' contentions amount to no more than an assertion that the due process clause of the Fourteenth Amendment as a safeguard of 'liberty' confers the right to be students in the state university free from obligation to take military training as one of the conditions of attendance. Viewed in the light of our decisions that proposition must at once be put aside as untenable." That decision appears to us to support in general the contentions of the respondents. It stamps with disapproval the contention of the petitioner that any right secured to him by the Federal Constitution or its Amendments has been infringed. There is nothing at variance with the conclusion here reached in *Meyer* v. *Nebraska*, 262 U. S. 390, and *Pierce* v. *Society of Sisters*, 268 U. S. 510.

The result is that, in our opinion, the rule and said c. 258 are not invalid and the petitioner fails to show that any of his rights have been invaded.

Matters of policy or wisdom are not open for our consideration. Our decision is confined to the question of law whether the petitioner is entitled to the writ.

*Petition dismissed.*