GOBITIS et al. v. MINERSVILLE SCHOOL DIST. et al.

No. 9727.

District Court, E. D. Pennsylvania.

Dec. 1, 1937.

582

H. M. McCaughey, of Philadelphia, Pa., for plaintiffs.

John B. McGurl, of Minersville, Pa., and Rawle & Henderson, of Philadelphia, Pa., for defendants.

MARIS, District Judge.

The plaintiffs, Walter Gobitis, and his two minor children, Lillian and William, have filed their bill in equity against the school district of the borough of Minersville, Schuylkill county, Pa., and against eight individuals, seven of them comprising the board of school directors of the school district, and one of them being the superintendent of schools of the district.

The bill avers that the minor plaintiffs, who reside in the borough of Minersville, attended the public schools conducted by the defendants prior to November 6, 1935. On that day the defendant school directors adopted a school regulation requiring all teachers and pupils of the schools to salute the American flag as a part of the daily exercises and providing that refusal to salute the flag should be regarded as an act of insubordination and should be dealt with accordingly. Plaintiffs, who are members of a body of Christians known as Jehovah's Witnesses, are conscientiously opposed upon religious grounds to saluting the flag, since they consider such action to be a direct violation of divine commandments laid down in the Bible. The minor plaintiffs, having been conscientiously unable, because of their religious beliefs and manner of worship, to salute the flag as required by the regulation of the defendant school directors, above referred to, they were on November 6, 1935, expelled, by the defendant superintendent of schools, from the public schools conducted by the defendants, and by reason thereof have since been unable to attend those schools.

The bill further avers that plaintiff Walter Gobitis is financially unable to provide an education for the minor plaintiffs at a private school and that the refusal of the defendants to permit them to remain in the public schools has damaged him in excess of $3,000. Alleging that the defendants' regulation violates the Fourteenth Amendment to the Federal Constitution, in that it unreasonably restricts the freedom of religious belief and worship and the free exercise thereof of the plaintiffs, the bill seeks an injunction restraining the defendants from enforcing the regulation against the plaintiffs. The defendants have moved to dismiss the bill upon the grounds that a good cause of action is not set forth and that, even if it is, this court has no jurisdiction to entertain it.

In disposing of defendants' motion, the facts set forth in the bill and the inferences properly to be drawn therefrom must be taken to be true. Considering them in this light we will first examine the cause of action averred by the bill. It is claimed on behalf of the minor plaintiffs that they have the right to attend the defendants' public schools; indeed that they are required by law to attend them unless they can secure equivalent education privately. This, however, Walter Gobitis avers he is financially unable to provide. They further contend that the enforcement of defendants' regulation conditions their right upon their participation in what is to them a religious ceremony to which they are conscientiously opposed, thus depriving them of their liberty of conscience without due process of law. They also say that, since they are required by law to attend defendants' public schools, being financially unable to secure an equivalent education privately, they are by reason of the regulation in question placed under legal compulsion to participate in an act of worship contrary to the dictates of their consciences.

Under section 1414 of the School Code, as recently amended, July 1, 1937, (24 P.S. Pa. § 1421), the minor plaintiffs are required to attend a day school continuously throughout the entire term during which the public elementary schools in their district shall be in session, until they respectively reach 18 years of age. Section 1423 of the School Code (24 P.S.Pa. § 1430) provides that every parent of any child of school age who fails to comply with the provisions of the act regarding compulsory attendance is guilty of a misdemeanor. In the light of

these statutory provisions and of section 1 of article 10 of the State Constitution which directs the General Assembly to "provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this Commonwealth above the age of six years may be educated," we conclude that the minor plaintiffs have a right to attend the public schools and indeed a duty to do so if they are unable to secure an equivalent education privately.

■■ Section 3 of article 1 of the Constitution of Pennsylvania provides that "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; * * * no human authority can, in any case whatever, control or interfere with the rights of conscience." This is but the expression of the full and free right which, as Mr. Justice Miller said in Watson v. Jones, 13 Wall. (80 U.S.) 679, 728, 20 L.Ed. 666, in this country is conceded to all "to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights."

The right of conscience referred to in the Pennsylvania Constitution was defined by Chief Justice Gibson in Commonwealth v. Lesher, 17 Serg. & R. (Pa.) 155, to be "a right to worship the Supreme Being according to the dictates of the heart; to adopt any creed or hold any opinion whatever on the subject of religion; and to do, or forbear to do, any act, for conscience sake, the doing or forbearing of which, is not prejudicial to the public weal." In these words that eminent jurist clearly stated the principle which underlies the constitutional provisions of all the states and which is one of the fundamental bases upon which our nation was founded, namely, that individuals have the right not only to entertain any religious belief but also to do or refrain from doing any act on conscientious grounds, which does not prejudice the safety, morals, property or personal rights of the people.

In applying this principle it is obvious that the individual concerned must be the judge of the validity of his own religious beliefs. Liberty of conscience means liberty for each individual to decide for himself what is to him religious. If an individual sincerely bases his acts or refusals to act on religious grounds they must be accepted as

such and may only be interfered with if it becomes necessary to do so in connection with the exercise of the police power, that is, if it appears that the public safety, health or morals or property or personal rights will be prejudiced by them. To permit public officers to determine whether the views of individuals sincerely held and their acts sincerely undertaken on religious grounds are in fact based on convictions religious in character would be to sound the death knell of religious liberty. To such a pernicious and alien doctrine this court cannot subscribe.

■■ In the present case the bill avers that the refusal of the minor plaintiffs to salute the flag is based on conscientious religious grounds. It seems obvious that their refusal to salute the flag in school exercises could not in any way prejudice or imperil the public safety, health or morals or the property or personal rights of their fellow citizens. Certainly no such suggestion was made by the defendants at the argument. However, in the view we have taken, such prejudice or peril, if it exists, is a matter of defense. Consequently we must hold on this motion that the action of the minor plaintiffs in refusing for conscience sake to salute the flag, a ceremony which they deem an act of worship to be rendered to God alone, was within the rights of conscience guaranteed to them by the Pennsylvania Constitution. The conclusion is inescapable that the requirement of that ceremony as a condition of the exercising of their right or the performance of their duty to attend the public schools violated the Pennsylvania Constitution and infringed the liberty guaranteed them by the Fourteenth Amendment.

We are aware that a number of courts have reached a contrary conclusion. Hering v. State Board of Education, 117 N.J.L. 455, 189 A. 629, affirmed 118 N.J.L. 566, 194 A. 177; Leoles v. Landers (Ga.Sup.) 192 S. E. 218; Nicholls v. Mayor and School Committee of Lynn (Mass.) 7 N.E.2d 577, 110 A.L.R. 377. In each of these cases it was held that the salute to the flag could have no religious significance. In so holding, however, it appears to us that the courts which decided these cases overlooked the fundamental principle of religious liberty to which we have referred; namely, that no man, even though he be a school director or a judge, is empowered to censor another's religious convictions or set bounds to the areas of human conduct in which those con-

victions should be permitted to control his actions, unless compelled to do so by an overriding public necessity which properly requires the exercise of the police power. Furthermore it appears that the courts in these cases largely relied on Hamilton v. Regents of University of California, 293 U. S. 245, 55 S.Ct. 197, 204, 79 L.Ed. 343, in which the Supreme Court held that a regulation of the University of California making military training compulsory for all students did not unduly infringe the liberty of students who were opposed to war and military training on religious grounds. That decision, however, was placed upon the ground that, although the right to entertain the beliefs, to adhere to the principles, and to teach the doctrines on which these students based their objections to military training, is included in the religious liberty of the individual, that liberty had not been infringed by the regulation in question, since the objecting students were not required by law to attend the university, and in any event the right of the state in the interest of public safety to require its citizens to prepare for its defense by force of arms was paramount to their right to religious liberty. In that case Mr. Justice Butler said:

"There need be no attempt to enumerate or comprehensively to define what is included in the 'liberty' protected by the due process clause. Undoubtedly it does include the right to entertain the beliefs, to adhere to the principles, and to teach the doctrines on which these students base their objections to the order prescribing military training. Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446; Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Stromberg v. California, 283 U.S. 359, 368, 369, 51 S.Ct. 532, 75 L.Ed. 1117, 73 A. L.R. 1484; Near v. Minnesota, 283 U.S. 697, 707, 51 S.Ct. 625, 75 L.Ed. 1357. The fact that they are able to pay their way in this University but not in any other institution in California is without significance upon any constitutional or other question here involved. California has not drafted or called them to attend the University. They are seeking education offered by the state and at the same time insisting that they be excluded from the prescribed course solely upon grounds of their religious beliefs and conscientious objections to war, preparation for war, and military education. Taken on the basis of the facts alleged in the petition, appellants' contentions amount to no more than an assertion that the due process clause of the Fourteenth Amendment as a safeguard of 'liberty' confers the right to be students in the State University free from obligation to take military training as one of the conditions of attendance.

"Viewed in the light of our decisions, that proposition must at once be put aside as untenable.

"Government, federal and state, each in its own sphere owes a duty to the people within its jurisdiction to preserve itself in adequate strength to maintain peace and order and to assure the just enforcement of law. And every citizen owes the reciprocal duty, according to his capacity, to support and defend government against all enemies. Selective Draft Law Cases, supra, 245 U. S. 366, at page 378, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas.1918B, 856; Minor v. Happersett, 21 Wall. 162, 166, 22 L.Ed. 627."

In the case before us the attendance of the minor plaintiffs at defendants' schools is, as we have seen, required by law. Furthermore their refusal to salute the flag does not prejudice the public safety. Consequently Hamilton v. Regents of University of California, supra, does not support the validity of the regulation here involved. On the contrary that regulation, although undoubtedly adopted from patriotic motives, appears to have become in this case a means for the persecution of children for conscience' sake. Our beloved flag, the emblem of religious liberty, apparently has been used as an instrument to impose a religious test as a condition of receiving the benefits of public education. And this has been done without any compelling necessity of public safety or welfare. We may well recall that William Penn, the founder of Pennsylvania, was expelled from Oxford University for his refusal for conscience' sake to comply with regulations not essentially dissimilar, and suffered, more than once, imprisonment in England because of his religious convictions. The commonwealth he founded was intended as a haven for all those persecuted for conscience' sake. The provisions of its Constitution to which we have referred were undoubtedly intended to secure to its citizens that religious freedom which had been denied their ancestors in the countries from which they came. These constitutional provisions must be construed in the light of

*that history.* Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597; People v. Harding, 53 Mich. 481, 19 N.W. 155; Id., Farmers' & Mechanics' Bank v. Smith, 3 Serg. & R. (Pa.) 63. In these days when religious intolerance is again rearing its ugly head in other parts of the world it is of the utmost importance that the liberties guaranteed to our citizens by the fundamental law be preserved from all encroachment. Our conclusion is that the plaintiffs have stated a good cause of action.

The defendants' motion also raised the question of the jurisdiction of this court to entertain the action. This the plaintiff contends is conferred by subdivision (1), as amended by Act May 14, 1934, and subdivision (14) of section 24 of the Judicial Code (28 U.S.C. § 41(1, 14), 28 U.S.C.A. § 41(1, 14).

Subdivision (1) of section 24 of the Judicial Code gives the District Courts jurisdiction "of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States."

Subdivision (14) confers jurisdiction "of all suits * * * in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

The suits referred to in subdivision (14) are those authorized by section 1979, R.S. (8 U.S.C. § 43, 8 U.S.C.A. § 43), which provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The question which we must determine is whether the rights which the plaintiffs claim have been invaded arise under the Constitution of the United States within the meaning of subdivision (1) of section 24 of the Judicial Code, as amended by Act May 14, 1934, 28 U.S.C.A. § 41(1), or are secured by the Constitution within the meaning of subdivision (14), 28 U.S.C.A. § 41(14). If they do not, then the case does not fall within either subdivision and this court has no jurisdiction.

 It is quite clear that plaintiff's rights are not secured by the Federal Constitution but are secured if at all, by the Constitution and laws of Pennsylvania. The only provision of the Federal Constitution on the subject is contained in the First Amendment and that merely prohibits Congress from making any law "respecting an establishment of religion, or prohibiting the free exercise thereof." It confers no rights upon these plaintiffs. Permoli v. Municipality No. 1 of the City of New Orleans, 3 How. (44 U.S.) 589, 11 L.Ed. 739. Nor does the Fourteenth Amendment, which provides that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of liberty * * * without due process of law" have that effect. The privileges and immunities protected by this amendment are only those that belong to citizens of the United States as distinguished from citizens of the states—those that arise from the Constitution and laws of the United States as contrasted with those that spring from other sources. Hamilton v. Regents of University of California, supra, 293 U.S. 245, at page 261, 55 S.Ct. 197, 203, 79 L.Ed. 343. Nor does the due process clause secure to the plaintiffs the rights in question. That clause merely protects existing personal liberties from undue abridgment by the states. It does not itself secure to individuals any new or additional liberties. Subdivision (14) relates only to rights secured by the Constitution or laws of the United States. It follows that this court has no jurisdiction of the suit under that subdivision.

 Do we, however, have jurisdiction of the suit under subdivision (1) as of a case involving $3,000 and arising under the Constitution of the United States? So far as the jurisdictional amount is concerned there is a clear averment in the bill that plaintiff Walter Gobitis is financially unable to provide an education for the minor plaintiffs at a private school and that the refusal of the defendants to permit them to remain in the public schools has damaged him in excess of $3,000. We cannot say, as a matter of law, that it will not cost him $3,000 to

complete the education of the minor plaintiffs at private schools. Consequently we must hold that the court has jurisdiction so far as the amount involved is concerned.

There remains the question whether the suit is one arising under the Constitution of the United States. The liberty protected by the due process clause of the Fourteenth Amendment undoubtedly includes the liberty to entertain any religious belief, to practice any religious principle, and to do any act or refrain from doing any act, on conscientious grounds, which does not endanger the public safety, violate the laws of morality or property, or infringe on personal rights. Hamilton v. Regents of University of California, supra, 293 U.S. 245, at page 262, 55 S.Ct. 197, 204, 79 L.Ed. 343. The prohibition of the due process clause is against action by the states and it follows that if the state of Pennsylvania has deprived the plaintiffs of their religious liberty without due process of law the case arises under the Fourteenth Amendment to the Federal Constitution and this court has jurisdiction of the bill under subdivision (1) of section 24 of the Judicial Code, as amended by Act May 14, 1934, 28 U.S.C.A. § 41(1).

This brings us to the final question whether from the averments of the bill it appears that the state of Pennsylvania has done so. As we have already indicated the enforcement against the minor plaintiffs of the regulation in question appears to deprive the plaintiffs of the liberty of conscience guaranteed them by the Pennsylvania Constitution and protected by the Fourteenth Amendment to the Federal Constitution. The regulation would consequently run afoul of the due process clause if its adoption and enforcement can be said to be the action of the state.

It is clear that the defendant school district is an arm of the state, Ford v. School District, 121 Pa. 543, 15 A. 812, 1 L.R.A. 607; and that its regulations, adopted within the scope of the authority granted to it by the statutes of the state, are the acts of the state within the meaning of the Fourteenth Amendment. New Orleans Water-Works Co. v. Louisiana Sugar Refining Co., 125 U.S. 18, 8 S.Ct. 741, 31 L.Ed. 607; North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195, 15 Ann.Cas. 276. It is equally clear that if the regulation in question was adopted without statutory authority or in direct violation of a statutory prohibition it is not the act of the state and cannot give rise to a federal question. Barney v. New York, 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737; Memphis v. Cumberland Teleph. & Teleg. Co., 218 U.S. 624, 31 S.Ct. 115, 54 L.Ed. 1185.

The authority conferred by the Pennsylvania School Code upon the defendant school district is to adopt "and enforce such reasonable rules and regulations as it may deem necessary and proper * * * regarding the conduct and deportment of all pupils attending the public schools in the district." 24 P.S. § 338. It will thus be seen that the power conferred upon the defendant school directors was to adopt such regulations as are reasonable. There is in the present bill, however, no averment that the regulation in question is unreasonable. Relief is not sought upon the ground that the defendants are without power under the School Code to adopt and enforce the regulation or that they are prohibited by it from doing so. Obviously it cannot be said that the regulation is unreasonable per se or that considered generally it is repugnant to the Constitution or laws of the state. It is only in its application to the minor plaintiffs that it violates the constitutional guarantees. What we have here is an action by public officers, agents of the state, within the scope of the power conferred upon them by statute which when applied to these plaintiffs deprives them of their liberty of conscience in violation of the Fourteenth Amendment. Such an abuse of power presents a case arising under the Constitution, and this court accordingly has jurisdiction under subsection (1) of section 24 of the Judicial Code, as amended by Act May 14, 1934, 28 U.S.C. A. § 41(1). Home Telephone & Telegraph Co. v. Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510. In the case just cited Chief Justice White said (at pages 287–289 of 227 U.S., 33 S.Ct. 312, 315, 57 L.Ed. 510): "To speak broadly, the difference between the proposition insisted upon and the true meaning of the Amendment is this: that the one assumes that the Amendment virtually contemplates alone wrongs authorized by a state, and gives only power accordingly, while in truth the Amendment contemplates the possibility of state officers abusing the powers lawfully conferred upon them by doing wrongs prohibited by the Amendment. In other words, the Amendment, looking to the enforcement of the rights which it guarantees and to the prevention of the wrongs which it prohibits,

588

proceeds not merely upon the assumption that states, acting in their governmental capacity, in a complete sense, may do acts which conflict with its provisions, but, also conceiving, which was more normally to be contemplated, that state powers might be abused by those who possessed them, and as a result might be used as the instrument for doing wrongs, provided against all and every such possible contingency. Thus, the completeness of the Amendment in this regard is but the complement of its comprehensive inclusiveness from the point of view of those to whom its prohibitions are addressed. Under these circumstances it may not be doubted that where a state officer, under an assertion of power from the state, is doing an act which could only be done upon the predicate that there was such power, the inquiry as to the repugnancy of the act to the 14th Amendment cannot be avoided by insisting that there is a want of power. That is to say, a state officer cannot, on the one hand, as a means of doing a wrong forbidden by the Amendment, proceed upon the assumption of the possession of state power, and at the same time, for the purpose of avoiding the application of the Amendment, deny the power, and thus accomplish the wrong. To repeat: for the purpose of enforcing the rights guaranteed by the Amendment when it is alleged that a state officer, in virtue of state power, is doing an act which, if permitted to be done, prima facie would violate the Amendment, the subject must be tested by assuming that the officer possessed power if the act be one which there would not be opportunity to perform but for the possession of some state authority."

It may be thought, in view of the fact that the plaintiffs' rights arise under the Pennsylvania Constitution and the defendants' action, being in violation of that Constitution, is unconstitutional and void, that it is therefore not the action of the state within the meaning of the Fourteenth Amendment but rather a matter to be dealt with first by the state courts. This very question, however, was presented in Home Telephone & Telegraph Co. v. Los Angeles, supra, and in disposing of it the court held that the fact that the State Constitution also prohibited the action in question did not deprive the federal court of jurisdiction or require that the matter be first litigated in the state courts.

The motion to dismiss the bill is denied.