## JOHNSON et al. v. TOWN OF DEERFIELD et al.
### No. 64.

District Court, D. Massachusetts.

Jan. 4, 1939.

Olin R. Moyle, of Brooklyn, N. Y., A. Frank Reel and Roewer & Reel, all of Boston, Mass., for plaintiffs.

John W. Heselton, of Greenfield, Mass., for defendants.

Before BINGHAM, Circuit Judge, and BREWSTER and SWEENEY, District Judges.

BREWSTER, District Judge.

This bill of complaint is brought for the purpose of obtaining a declaratory judgment decreeing a statute of Massachusetts void, as violating rights secured to the plaintiffs by the Constitution of the United States. An application for a temporary injunction was heard by a three-judge court upon the verified allegations of the bill. The following facts are alleged:

The plaintiffs are a father and three of his minor children, residing in the Town of Deerfield.

The defendants are the Town of Deerfield, the School Committee and the Superintendent of Schools in that town.

On October 14, 1938, the School Committee adopted a resolution, as follows: "Voted that all children attending the public schools of Deerfield be required to salute the flag in accordance with Chapter 71, Section 69, General Laws. Any infraction from this rule shall be penalized by expulsion from school until such pupils comply with this statute."

The statute (G.L. [Ter.Ed.] c. 71, § 69, as amended by chapter 258 of the Acts of 1935) pursuant to which this resolution was adopted, provides that the United

States flag shall be displayed in the public school rooms where daily opening exercises are held, and that "Each teacher shall cause the pupils under his charge to salute the flag and recite in unison with him at said opening exercises at least once each week the 'Pledge of Allegiance to the Flag'."

Penalties are imposed upon the School Committee and the teachers for failure to comply with the statute.

The minor plaintiffs are eligible to attend the public schools of the town, and did attend, conducting themselves properly, until October 21, 1938, when they were expelled for refusing to salute the flag.

The plaintiffs are members of a religious sect, known as Jehovah's Witnesses, who sincerely and honestly believe that to obey the law requiring school children to salute the flag is to violate the commands of Almighty God, found in the Book of Exodus (c. 20, verses 4, 5 and 6), forbidding idolatry. They allege: "To salute a flag means in effect that the person saluting the flag ascribes salvation and protection to the thing or power which the flag stands for and represents, and that since the flag and the government which it symbolizes is of the world and not of Jehovah God, it is wrong to salute the flag, and to do so denies the supremacy of God, and contravenes His express command as set forth in Holy Writ."

The statutes of Massachusetts (c. 76, §§ 1 and 2, and c. 77, § 5) require every child between 7 and 14, with immaterial exceptions, to attend a day school for a specified period each year, with penalties upon the parent, and possible commitment of the children to a county training school, for failure to comply.

It is alleged that the father is not financially able to provide education at a private school, or furnish tutors, or obtain for them equivalent instruction elsewhere than at a public school. Plaintiffs allege their loyalty to the United States and to the Commonwealth of Massachusetts. There are other allegations, but as they cannot be regarded as allegations of fact they need not be recited.

The main thesis advanced by the plaintiffs is that the Flag Salute Law deprives them, without due process of law, of liberties guaranteed to them by the Fourteenth Amendment of the Federal Constitution, U.S.C.A. These liberties are the right of religious freedom and the right to obtain an education in the public schools. It is contended that the statute, when considered in connection with the laws of Massachusetts compelling school attendance, abridges these liberties.

We are prepared to assume, for the present purposes, that these rights are within the protection of the amendment. Hamilton v. Regents of University of California, 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343; Meyer v. State of Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446; Pierce v. Society of Sisters of Holy Names, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288.

■ We are of the opinion that so far as the question involves religious freedom, the plaintiffs are foreclosed by action of the Supreme Court in dismissing two appeals from State courts of last resort which had upheld as valid similar statutes. In Leoles v. Landers, 184 Ga. 580, 192 S.E. 218, and in Hering v. State Board of Education, 117 N.J.L. 455, 189 A. 629, the courts considered statutes in all material respects similar to the Massachusetts law. In both courts it was held that obedience to the statute in no conceivable sense could be construed as a "religious rite". It involved no more than an expression of due respect for the institutions and ideals of the country in which the plaintiffs lived. They agreed that the statute provided for a patriotic ceremony rather than an act of religious worship. In both cases appeals were taken and dismissed for want of a substantial Federal question. Leoles v. Landers, 302 U.S. 656, 58 S.Ct. 364, 82 L. Ed. 507; Hering v. State Board of Education, 303 U.S. 624, 58 S.Ct. 752, 82 L.Ed. 1087.

■ When an appeal is dismissed for want of a substantial Federal question, it means, as we understand, that every question brought to the court by the appellant for decision is "so clearly not debatable and utterly lacking in merit as to require dismissal for want of substance." Hamilton v. Regents of University of California, supra, 55 S.Ct. 202. See, also, Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152. Moreover, the statute has been declared a valid enactment by the Supreme Judicial Court of Massachusetts in Nicholls v. Mayor and School Committee of Lynn, 7 N.E.2d 577, 110 A.L.R. 377.

The Massachusetts Constitution contains liberal provisions safeguarding the

rights of the individual to worship according to his conscience by providing, in Article 2 of the Declaration of Rights, that "No subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship."

In the course of his opinion upholding the law, Chief Justice Rugg observed (page 580):

"The flag salute and pledge of allegiance here in question do not in any just sense relate to religion. They are not observances which are religious in nature. They do not concern the views of any one as to his Creator. They do not touch upon his relations with his Maker. They impose no obligations as to religious worship. They are wholly patriotic in design and purpose. * * *

"The salute and pledge do not go beyond that which, according to generally recognized principles, is due to government. There is nothing in the salute or the pledge of allegiance which constitutes an act of idolatry, or which approaches to any religious observance. It does not in any reasonable sense hurt, molest, or restrain a human being in respect to 'worshipping God' within the meaning of words in the Constitution. The rule and the statute are well within the competency of legislative authority. They exact nothing in opposition to religion. They are directed to a justifiable end in the conduct of education in the public schools. The practice of the petitioner was in contravention of them."

In the light of these decisions of the Federal and State courts, we do not feel justified in striking down the statute as one impairing plaintiffs' religious liberty in violation of the due process clause of the Fourteenth Amendment. We need more than doubtful ground upon which to base a contrary decision.

Much is made of the argument that the question whether the statute commands an act of patriotic loyalty or an act of religious worship is one upon which the courts have no right to pass. The plaintiffs say that if they honestly and conscientiously believe that the salute is a religious rite, then their belief prevails and the law must yield to it.

We can find our answer to this argument in the adjudicated cases. In Reynolds v. United States, 98 U.S. 145, 167, 25 L.Ed. 244, it was said that one could not excuse a practice contrary to statute because of his religious belief, Chief Justice Waite saying, "To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself."

Hamilton v. Regents of University of California, supra, was a case where students in a State University, deeming it incompatible with their religious belief, refused to take required military training. Mr. Justice Cardozo, in his concurring opinion, observed: "The conscientious objector, if his liberties were to be thus extended, might refuse to contribute taxes in furtherance of a war, whether for attack or for defense, or in furtherance of any other end condemned by his conscience as irreligious or immoral. The right of private judgment has never yet been so exalted above the powers and the compulsion of the agencies of government. One who is a martyr to a principle—which may turn out in the end to be a delusion or an error—does not prove by his martyrdom that he has kept within the law."

These cases differ very little in principle from the case at bar. The Reynolds Case dealt with a statute designed to prevent plural marriages. In both the Reynolds Case and the Hamilton Case the public welfare to be served was perhaps more obvious than in the instant case where, upon the allegations, it is fair to assume that the plaintiffs' beliefs respecting the significance of the salute will not tend to disturb the public peace or endanger the State. However, that may be, the courts of Massachusetts have said that the legislation was within the power of the legislative body as a proper regulation of the public schools supported by the State. If the legislature deemed it wise to enact legislation demanding that the youth of the State give some overt expression of their loyalty to and respect for the institutions of their country, it is not for this court to condemn the legislation unless satisfied that the regulation bears no reasonable relation to some purpose within the competency of the State.

In view of the decisions of the Supreme Court of the United States and of the Supreme Judicial Court of Massachusetts, we

do not feel free to hold that the Flag Law bears no reasonable relation to such a purpose.

The argument that the law does not accomplish the intended purpose is one that might properly be addressed to the lawmaking body rather than to the court, which has no power to invalidate a law because it might, in its opinion, be unwise or ineffectual legislation.

The plaintiffs have brought to our attention a decision of the District Court for the District of Pennsylvania, in the case of Gobitis v. Minersville School District, 21 F.Supp. 581 (Id., D.C., 24 F.Supp. 271), where the decision went in favor of the Jehovah Witness. While we could hardly be expected to let that case outweigh the above cited decisions to the contrary, it may be proper to point out that the court there had before it a resolution of the School Directors, based upon a Pennsylvania Statute which conferred upon a school district authority to " 'enforce such reasonable rules and regulations as it may deem necessary and proper * * * regarding the conduct and deportment of all pupils attending the public schools in the district.' 24 P.S. [Pa.] § 338" [page 587] and the learned court found that this resolution was in contravention of the Pennsylvania Constitution. That being so, it would follow that the act of the defendants in expelling the plaintiff was without due process of law.

In the case at bar, we have before us a resolution based upon a statute which has been upheld as a valid enactment by the highest court of the State.

It is further contended that the Massachusetts statute deprives the plaintiffs of constitutional rights to attend the public schools. Granting, as we think we must, that such a right exists, it is not an absolute right but is one which is at all times subject to such reasonable conditions as the State may impose. Sherman v. Inhabitants of Charlestown, 8 Cush., Mass., 160; Hodgkins v. Rockport, 105 Mass. 475; Watson v. City of Cambridge, 157 Mass. 561, 32 N.E. 864; Antell v. Stokes, 287 Mass. 103, 191 N.E. 407; Leonard v. School Committee of Springfield, 241 Mass. 325, 135 N.E. 459; Waugh v. Board of Trustees of University of Mississippi, 237 U.S. 589, 35 S.Ct. 720, 59 L.Ed. 1131.

In Sherman v. Charlestown, supra, Shaw, C. J., speaking for the Court, said:

"We think the whole tone and tenor of the laws demonstrate, that it was the intention of the legislature to make the public schools a system of moral training, as well as seminaries of learning."

From what we have stated above with reference to the religious aspect of the question, the conclusion would inevitably follow that this challenged statute is not so unreasonable or arbitrary as to place it beyond the powers of the legislature to enact.

The plaintiffs' application for interlocutory injunction is denied.

If the plaintiffs should prove all the facts alleged in their verified bill of complaint, they would not, in our opinion, be entitled to any equitable relief, and, therefore, on the authority of Petroleum Exploration, Inc., v. Public Service Commission, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294, and Manhattan Transit Co., Inc., v. United States et al., D.C., 24 F.Supp. 174, we dismiss the bill of complaint.