COMMONWEALTH *vs.* WILLIAM JOHNSON, JUNIOR, & others.

Franklin. September 20, 1939, March 31, 1941. — July 24, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*School and School Committee. Words,* "Habitual school offender."

A public school pupil under sixteen years of age could not be found to be an "habitual school offender" and committed to a county training school under G. L. (Ter. Ed.) c. 77, § 5, solely because of his persistent refusal to obey a rule of the school committee requiring all pupils "to salute the flag in accordance with" c. 71, § 69, as appearing in St. 1935, c. 258.

COMPLAINT, received and sworn to in the District Court of Franklin on April 25, 1939.

Upon appeal to the Superior Court, the case was heard without a jury by *Swift,* J. The defendants were found guilty and alleged exceptions.

*G. K. Gardner,* & *H. C. Covington* of Texas, for the defendants.

*J. W. Heselton,* District Attorney, for the Commonwealth.

FIELD, C.J. This is a complaint brought in the District Court by the supervisor of attendance of the town of Deerfield against three children, each under sixteen years of age, charging them with being "habitual school offenders by reason of persistently violating the reasonable regulations of the school they attended."

The statute under which the complaint appears to have been brought is G. L. (Ter Ed.) c. 77, § 5, reading as follows: "A child under sixteen persistently violating reasonable regulations of the school he attends, or otherwise persistently misbehaving therein, so as to render himself a fit subject for exclusion therefrom, shall be deemed an habitual school offender, and, unless placed on probation as provided in section seven, may, on complaint of a supervisor of attendance, be committed to a county training school."

On appeal to the Superior Court the case was tried before a judge sitting without a jury, on a "Statement of Agreed Facts" which was read in evidence. No further evidence was offered by any party. The defendants requested certain rulings. Some of the requested rulings were refused subject to the defendants' exceptions. The judge found the defendants guilty of the offence charged in the complaint. The judge offered to dispose of the case by placing the three defendants on probation upon certain stated conditions, but the defendants declined to accept said disposition if such acceptance "would require them to waive their rights under the bill of exceptions which they expect to file." The judge then ordered the defendants to stand committed to the Hampden County Training School, but stayed the execution of sentence pending decision of the questions of law involved in their exceptions.

The defendants'. exceptions include an exception to the refusal of the judge to rule, as requested, that "the facts shown to this court are not sufficient to support a finding or judgment that the defendants have committed the offence with which they are charged."

The refusal of the judge to rule as requested was error.

Material facts appearing in the "Statement of Agreed Facts" are these: The defendants, at the time the complaint was brought, were children respectively twelve, eleven and seven years old, residing with their father and mother in their father's home in the town of Deerfield, and have so resided for several years. The town maintained a system of public schools under the management of a school committee, including an elementary school "which is maintained for the purpose of providing public instruction for children of the ages of these defendants residing in the district." From the opening of the school in September, 1938, until October 21, 1938, and from about February 2, 1939, until April 26, 1939, the defendants attended school. At all material times it has been the practice of the teachers in the school attended by the defendants "to require all its pupils to participate regularly in an exercise which is conducted as follows: All pupils of each grade assemble and stand at attention facing the flag of the United States. They then raise their right hands and salute and say in unison: 'I pledge allegiance to the Flag of the United States of America and to the Republic for which it stands, one nation, indivisible, with liberty and justice for all.'" On October 14, 1938, the school committee adopted the following resolution: "Voted that all children attending the public schools of Deerfield be required to salute the flag in accordance with Chapter 71, Section 69, General Laws. Any infraction from this rule shall be penalized by expulsion from school until such pupils comply with this statute."

While attending school the defendants "have persistently refused to take part in the exercise . . . [above described] but they have always been respectful in their refusal to take part in the exercise, and have been studious, industrious, obedient, and well behaved children in every other re-

spect." The reason for their refusal to take part in the exercise was that they and their parents are members of an "association of Christian people called Jehovah's witnesses" who "sincerely and honestly believe that participation in the exercise . . . contravenes the law of Almighty God," and that the "defendants have been instructed by their parents and by others in the beliefs of Jehovah's witnesses . . . and in consequence of such instruction now sincerely and honestly believe, and at all material times have sincerely and honestly believed, the same." The "Statement of Agreed Facts" sets forth their beliefs in much greater detail.

On October 19, 1938, the defendants' father was notified by the superintendent of schools of the town of Deerfield that the school committee had "voted to expel from the schools pupils who continually refuse or neglect to salute the Flag until such a time as they are ready to comply with the statute requiring such salute" and that if the defendants "do not comply with this regulation of the School Committee" (obviously referring to the resolution of October 14, 1938) by a fixed date "they will be considered as expelled from the schools." There was further correspondence on the subject, and a hearing before the school committee. Thereafter, on November 17, 1938, the school committee adopted resolutions excluding the defendants from the Deerfield public schools until they were "willing to comply with the provisions of chapter 71, section 69, General Laws" and the resolution of the school committee of October 14, 1938. These resolutions of November 17, 1938, have never been modified nor rescinded by any specific vote. The nonattendance of the defendants at school from October 21, 1938, until February 2, 1939, "was due to their exclusion" from the school, as herein described. There is nothing in the record to explain their attendance at school from February 2, 1939, until April 26, 1939.

On April 22, 1939, the school committee voted that the superintendent of schools be instructed to order the defendants' teachers to request the defendants "to salute the flag and join in the pledge of allegiance in accordance with

the regulations of said School Committee decreed October 14, 1938 and the provisions of General Laws, chapter 71, section 69, at the regular school exercises on Monday, April 24, 1939 and again at the regular exercises on Tuesday, April 25, 1939, and in the event of the refusal or failure of any or all of said pupils to comply with said request that the superintendent be instructed to refer the cases to the attendance officer for action under the provisions of General Laws, chapter 77, section 5." Such orders were given to the teachers and such requests were made of the defendants. The complainant, the supervisor of attendance, attended the school on each of the dates stated "and observed on each occasion that said defendants refused and neglected to comply with said requests and did not salute the flag or join in the pledge of allegiance." Their "refusal to participate in the exercise . . . was due to their sincere and honest beliefs," already referred to.

No question is presented in this case of the propriety of the exclusion of these defendants from school. That question, however, was decided adversely to the defendants in a proceeding brought in the District Court of the United States by the father of the defendants individually and in their behalf. See *Johnson* v. *Deerfield,* 25 Fed. Sup. 918; affirmed, 306 U. S. 621. The District Court in that case followed the decision of this court in *Nicholls* v. *Mayor & School Committee of Lynn,* 297 Mass. 65, decided upon facts not substantially different from the facts in the present case. The court there held constitutional the provision, inserted in G. L. (Ter. Ed.) c. 71, § 69, by St. 1935, c. 258, reading as follows: "Each teacher shall cause the pupils under his charge to salute the flag and recite in unison with him at said opening exercises at least once each week the 'Pledge of Allegiance to the Flag.' Failure for a period of five consecutive days by the principal or teacher in charge of a school equipped as aforesaid to display the flag as above required, or failure for a period of two consecutive weeks by a teacher to salute the flag and recite said pledge as aforesaid, or to cause the pupils under his charge so to do, shall be punished for every such period by a fine of not

more than five dollars." And it was further held that a general rule of the school committee requiring such a salute was "within the power conferred by G. L. (Ter. Ed.) c. 71, § 37, and . . . expressly authorized by St. 1935, c. 258." It was said that the "latter statute established no penalty for a disobedient pupil, but is directed to the school committee and to the teacher," that power "to enforce the rule is implied in the grant of power to establish it," and that it "necessarily follows that, if said c. 258 and the rule are valid, the school committee was acting within its jurisdiction in excluding . . . [the pupil there in question] from attending school." Page 68. See also *Minersville School District* v. *Gobitis*, 310 U. S. 586. Furthermore, no question is here presented as to the liability of the father of the defendants to a penalty under G. L. (Ter. Ed.) c. 76, § 2, if he fails to cause any of the defendants to attend school as required by c. 76, § 1. See St. 1939, c. 461, § 3. Nor is any question presented as to whether the defendants after being excluded from school could be found to be habitual truants or habitual absentees within the meaning of G. L. (Ter. Ed.) c. 77, §§ 3, 4.

A county training school, such as that to which the defendants were committed, is "a school for the instruction and training of children committed thereto as habitual truants, absentees or school offenders." The nature of such a school is to some extent indicated by the requirement that it be maintained "in a suitable place, remote from a penal institution." G. L. (Ter. Ed.) c. 77, § 1. See St. 1933, c. 295, § 1. On the other hand, being an "habitual truant," an "habitual absentee" or an "habitual school offender" is described in the statute as an "offence" of which a child may be "convicted" under said c. 77. See § 7.

The question for decision is whether, on the agreed facts, findings were warranted that each of the defendants was an "habitual school offender" by reason of "persistently violating reasonable regulations of the school he attends" within the meaning of G. L. (Ter. Ed.) c. 77, § 5.

One of the elements of being an "habitual school offender" is that the facts constituting a child such an offender must

be such as to render him a "fit subject for exclusion" from the school. Under the decision in the *Nicholls* case the facts here shown rendered each of the defendants a "fit subject for exclusion" from the school. But the power of a school committee to exclude children from school is very broad and is to be exercised for the "best interests of pupils and of all the people." *Hammond* v. *Hyde Park*, 195 Mass. 29, 30. *Barnard* v. *Shelburne*, 216 Mass. 19, 21. It may be exercised where there is no misconduct on the part of the child excluded. For example, the failure of a child to maintain a given standard of scholarship was held in *Barnard* v. *Shelburne*, 216 Mass. 19, to justify exclusion of such child from school, though the court said that such failure "is not misconduct in itself. . . . Misconduct is a very different matter from failure to attain a standard of excellence in studies." Page 22. The fact that the attendance of a child, wholly independent of such child's misconduct, would impair the efficiency of the school may be sufficient ground for exclusion. See *Alvord* v. *Chester*, 180 Mass. 20, 21. And protection of the health of other pupils may furnish a ground for exclusion of a child, though there is no "fault or crime, or wrong conduct" on the part of such child. *Sherman* v. *Charlestown*, 8 Cush. 160, 164. See *Hammond* v. *Hyde Park*, 195 Mass. 29. See also *Carr* v. *Dighton*, 229 Mass. 304.

General Laws (Ter. Ed.) c. 77, which relates to the commitment of children to county training schools, however, applies to children who have been guilty of misconduct. Being an "habitual truant" or an "habitual absentee" clearly constitutes misconduct. See §§ 3, 4. Though the training schools are maintained for "the instruction and training of children committed thereto" (§ 1), such a commitment, while not regarded strictly as for the purpose of punishment, has elements of a disciplinary nature closely related to punishment. There is close analogy in the treatment, prescribed by statute, of delinquent children who, though having committed offences against the criminal law, are to be treated "as nearly as possible" "not as criminals, but as children in need of aid, encouragement and guidance."

G. L. (Ter. Ed.) c. 119, § 53. See §§ 52–63. Likewise being an "habitual school offender" constitutes misconduct. This is the natural interpretation of the word "offender." The only facts rendering a child a "fit subject for exclusion" that also render him an "habitual school offender" are facts that import misconduct. These facts, in the language of the statute, are "persistently violating reasonable regulations of the school he attends, or otherwise persistently misbehaving therein." These words imply that "persistently violating reasonable regulations" must involve an element of "misbehaving" in order to make a child an "habitual school offender." Whatever may be the ultimate purpose of the provisions for commitment to training schools, these provisions are directed to dealing with individual children guilty of misconduct rather than to enforcing regulations, not involving misconduct on the part of individual children, for promoting the efficiency of the school for the benefit of all the pupils. See *Alvord* v. *Chester*, 180 Mass. 20, 21. It is hardly to be thought, for example, that the persistent failure of a child to maintain a proper standard of scholarship, as fixed by a reasonable rule of the school committee, in the absence of misconduct on his part, though rendering him a "fit subject for exclusion" from the school (see *Barnard* v. *Shelburne*, 216 Mass. 19) would also render such child an "habitual school offender" subject to commitment to a training school. A child who is a "fit subject for exclusion" from a school is not necessarily an "habitual school offender."

It becomes necessary, therefore, to examine, in the light of this distinction, G. L. (Ter. Ed.) c. 71, § 69, as appearing in St. 1935, c. 258, and the resolutions of the school committee adopted thereunder. By the statute the school committee is required to purchase a flag of the United States for each schoolhouse under its control. A penalty is provided for members of a school committee failing so to equip a schoolhouse. The statute further requires the display of such flag and provides a penalty for a principal or teacher in charge of a school failing to display the flag as so required. Finally each teacher is required by the amend-

ment to said § 69 by St. 1935, c. 258, to "cause the pupils under his charge to salute the flag and recite in unison with him" the pledge of allegiance to the flag, and a penalty is provided for the failure of such teacher "to salute the flag and recite said pledge . . . or to cause the pupils under his charge so to do." This statute is applicable only to public schools, though the Legislature must have known that many children of school age did not attend such schools. See G. L. (Ter. Ed.) c. 76, § 1; St. 1939, c. 461, § 3. See also *Pierce* v. *Society of Sisters,* 268 U. S. 510. Moreover, no penalty is provided by such statute for the failure of pupils, even in the public schools, to salute the flag and to recite the pledge. See *Nicholls* v. *Mayor & School Committee of Lynn,* 297 Mass. 65, 68. It is not without significance that the Legislature, though providing for penalties for three types of violation of the statute, provides no penalty for a pupil failing to salute the flag and recite the pledge.

It would, of course, have been unreasonable to impose a penalty upon a teacher in a public school for failing to cause the pupils under his charge to salute the flag and recite the pledge if such teacher had no means of requiring them to do so. And the court in the *Nicholls* case held that the school committee, within the power conferred upon it by G. L. (Ter. Ed.) c. 71, § 37, to "have general charge of all the public schools" and to "make regulations as to attendance therein," and the express authorization by St. 1935, c. 258, could make a rule requiring the salute to the flag and the recital of the pledge and had implied power to enforce such a rule by excluding from school a pupil who refused to conform thereto. The "ceremony" described was stated in the *Nicholls* case to be "clearly designed to inculcate patriotism and to instill a recognition of the blessings conferred by orderly government under the Constitutions of the State and nation. The study of those instruments is a proper subject for instruction in the public schools." Pages 68, 69.

It is apparent that the statute was directed to the manner of conducting public schools, particularly with respect

to instruction therein.   The teachers of a public school are charged by the statute with the duty to give the required instruction to pupils under their charge.   The statute does not expressly impose any duty of compliance with such instruction upon the pupils for breach of which they would be subject to penalty.   The only such duty imposed upon pupils is to be implied from the duty imposed upon the teacher to conduct and participate in the prescribed exercise.   There is, however, no suggestion in the statute that nonparticipation of an individual pupil in such exercise is in the nature of wrongdoing.   The natural implication from the imposition of the duty upon the teachers rather than upon the pupils is that such an exercise is for the benefit of the school as a whole as a matter of instruction, and that nonparticipation therein by an individual pupil may impair the efficiency of the instruction of other pupils.   See *Alvord* v. *Chester,* 180 Mass. 20, 21; *Barnard* v. *Shelburne,* 216 Mass. 19, 21.   Indeed, it was suggested in *Minersville School District* v. *Gobitis,* 310 U. S. 586, 599–600, that an exception to the uniform application of a requirement of saluting the flag might reasonably be thought to "cast doubts in the minds of the other children which would themselves weaken the effect of the exercise."   This ground, under the decisions of this court, would warrant exclusion from school of a child refusing to participate in the exercise, and would warrant a resolution such as is here involved, requiring such exclusion, as a reasonable regulation of instruction in the public schools of the town, comparable to the rule considered in *Barnard* v. *Shelburne,* 216 Mass. 19.   But it does not follow that, in the absence, as here, of other facts tending to show misconduct or misbehavior, violation of such a regulation of instruction in the public schools of a town, adopted under a statute that applies in terms only to children in public schools, and imposes no penalty even upon such children for failure to participate in the required exercise, imports such misconduct or misbehavior on the part of a child persistently failing to comply with such regulation as warrants a finding that such a child is an "habitual school offender" subject to being committed to a training school,

within the meaning of G. L. (Ter. Ed.) c. 77, § 5. No implication of power to discipline a child in this manner is necessary for the enforcement of the statute or the regulation. An intention that a child should be so disciplined is not lightly to be attributed to the Legislature, in the absence of express provision therefor. Compare *State* v. *Lefebvre,* 20 Atl. [2d] 185;[1] *Matter of Reed,* 262 App. Div. (N. Y.) 814.

In view of the conclusion reached as a matter of construction of the governing statutes it is not necessary to consider the constitutional questions argued nor the effect of the fact that the attendance of the defendants at school after February 2, 1939, so far as appears from the record, was without legal authority.

This decision is by a majority of the court.

> *Exceptions sustained.*
> *Judgment reversed.*
> *Judgment for the defendants.*