VIRGINIA ANTELL *vs.* LEROY T. STOKES & others.

MARY BLANCHETTE *vs.* SAME.

MARGARET BRESNAHAN *vs.* SAME.

MARJORIE CLEARY *vs.* SAME.

ELSIE FELLOWS *vs.* SAME.

ANNA JOHNSON *vs.* SAME.

BLANCHE SCRIBNER *vs.* SAME.

VIRGINIA WHITNEY *vs.* SAME.

Essex.    March 8, 1934. — June 25, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & LUMMUS, JJ.

*School and School Committee.    Constitutional Law.*

The school committee in a city adopted a rule entitled "Regulations on Fraternities and Sororities," reading in substance as follows: ". . . no student . . . [of the high school] shall be pledged to or join a secret organization composed wholly or in part of high school pupils unless said organization is approved by Superintendent and Principal . . . nor shall a student member or student members of such secret organizations as now exist pledge, initiate, accept or attempt to pledge, initiate, or accept a fellow student into membership. The wearing of jerseys, sweaters, caps, or other conspicuous evidence of membership in an unapproved secret organization is hereby forbidden on the school premises. The president or other officer of every unapproved secret organization now existing shall file with the principal: a. Name of organization, b. Lists of all student members, c. Dates and places of all meetings, d. Programs, dates and places of all house parties or other gatherings whether occurring during school year or in short

vacations. The penalty for violations of any of the above regulations is exclusion from the . . . School." All the students signed pledges, prepared by the principal, that they would observe the regulations. Some did not observe them and were expelled. Upon petitions by them for writs of mandamus directing their reinstatement, it was *held*, that

(1) The rule was within the grant of power to the school committee contained in G. L. (Ter. Ed.) c. 71, § 47;

(2) The rule was not invalid because it merely forbade the solicitation and initiation of new members and did not abolish such societies forthwith;

(3) The stated penalty of expulsion from school for violation of the rule did not exceed the power conferred by said § 47;

(4) No right guaranteed by the Constitution of the United States was infringed by said § 47 as thus interpreted.

(5) The petitions must be dismissed.

EIGHT PETITIONS for writs of mandamus, filed in the Supreme Judicial Court for the county of Essex on February 15, 1934, and described in the opinion.

The material facts were agreed to and are stated in the opinion. By order of *Lummus*, J., the cases were consolidated and were reserved and reported for determination by the full court.

*A. F. Priest*, for the petitioners.

*G. Karelitz*, for the respondents.

RUGG, C.J. Several petitions for writs of mandamus were consolidated for purposes of hearing by the single justice, who then reported the cases without decision. Each plaintiff prays for a writ to compel the respondents, the school committee of the city of Haverhill, to reinstate her as a pupil in the high school of that city. The material facts are agreed. The school committee passed a rule entitled "Regulations on Fraternities and Sororities" of the tenor following: "On and after May 15, 1933 no student in the Haverhill High School shall be pledged to or join a secret organization composed wholly or in part of high school pupils unless said organization is approved by Superintendent and Principal of Haverhill High School, nor shall a student member or student members of such secret organizations as now exist pledge, initiate, accept or attempt to pledge, initiate, or accept a fellow student into membership. The wearing of jerseys, sweaters, caps, or other conspicuous

evidence of membership in an unapproved secret organization is ,hereby forbidden on the school premises. The president or other officer of every unapproved secret organization now existing shall file with the principal: a. Name of organization, b. Lists of all student members, c. Dates and places of all meetings, d. Programs, dates, and places of all house parties or other gatherings whether occurring during school year or in short vacations. The penalty for violations of any of the above regulations is exclusion from the Haverhill High School. The principal of the High School may adopt such other rules and penalties as seem to him best for the close regulation of such fraternities and sororities as now exist until they shall pass out of existence and such rules shall be considered additions to the regulations given above."

The principal of the high school prepared registration blanks to be signed by pupils, on which was printed a copy of this regulation and to which was added the sentence: "My signature signifies that I have read carefully the school committee's regulations and promise on my honor to observe them." Each pupil was expected to sign this blank. No one refused. The only misconduct on the part of the petitioners who were excluded from school was violation of the rule and of the pledge.

The question is whether the school committee had power under the law to pass and enforce the rule. The relevant statutes are in G. L. (Ter. Ed.) c. 71; by § 37 it is provided that the school committee "shall have general charge of all the public schools . . . . It may determine, subject to this chapter, the number of weeks and the hours during which such schools shall be in session, and may make regulations as to attendance therein"; and by § 47 "The committee may supervise and control all athletic and other organizations composed of public school pupils and bearing the school name or organized in connection therewith."

Education of youth was provided at public expense and nourished with anxious solicitude through the colonial and provincial periods of our history. The duty to maintain and cherish public schools was declared in the Constitution,

c. 5, § 2. Money raised by taxation for the support of public schools has been segregated to those conducted under "the order and superintendence" of appropriate officials of the town or city by art. 46 of the Amendments to the Constitution. The jealous care of the General Court has always clothed municipal officers with adequate authority to encourage the highest practicable efficiency of the system of public education. The words quoted from the statutes are of wide import. They confer an ample power. For the promotion of the interests of the pupils and of all the people they have been broadly construed by the court for nearly a century. In the absence of other limitations, they include the power to determine within reason what pupils shall be received and what pupils shall be rejected. The general principle that the control and superintendence of the school committee extend to the regulation of attendance by pupils upon the public schools has been illustrated by application to many specific instances. *Cushing* v. *Newburyport,* 10 Met. 508, 511. *Alvord* v. *Chester,* 180 Mass. 20. *Morse* v. *Ashley,* 193 Mass. 294. *Barnard* v. *Shelburne,* 216 Mass. 19. *Wulff* v. *Wakefield,* 221 Mass. 427. *Leonard* v. *School Committee of Springfield,* 241 Mass. 325, 330.

As matter of interpretation the words of these sections warrant the adoption of the rule here assailed. It would be difficult to frame a more comprehensive grant of power in this connection than that to supervise and control all organizations composed of public school pupils and established in connection with the public schools. Discussion cannot clarify these unambiguous words. The history of § 47 confirms this view. By St. 1906, c. 251, the power was conferred upon school committees to supervise and control school athletic organizations. By St. 1919, c. 292, § 4, this power was enlarged so as to include other organizations as well as those purely athletic. The legislative intent to cede power embracing every kind of such organization could hardly be more clear.

The rule of the school committee here attacked was well within the grant conferred by § 47. The power in this par-

ticular as set forth in § 47 manifestly extends to organizations designed to be operative away from the school premises and outside school hours. This is not an invasion of the domain reserved exclusively to home and family. Formal associations of pupils in connection with a public school possess possibilities of genuine harm to the reputation of the school and to the studious habits and personal character of the members. These factors intimately concern the general welfare in connection with the public schools. They properly may be regulated by rules adopted pursuant to legislative sanction.

The rule is not invalid because it forbids the solicitation and initiation of new members and does not at one stroke abolish such societies. To provide for their gradual extinction by the efflux of time is not unreasonable and is within the scope of the legislative grant of power. Further provisions of the rule as to filing information touching the name of the organization, lists of members, dates, places and programs of meetings are incidental to general supervision and control of such organizations.

No point arises on this record as to the authority attempted to be delegated to the principal of the high school to adopt further rules and penalties for the close regulation of such existing organizations. It does not appear to have been exercised. The petitioners have no complaint in that regard. In any event, it is merely incidental to the main purpose and substance of the rule and is easily separable from other parts of it. There is no occasion to consider its validity. *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 81. *Lawton Spinning Co.* v. *Commonwealth,* 232 Mass. 28, 32. Plainly the principal was authorized to prepare the registration blanks and to request signatures to them by the pupils.

The penalty of expulsion from school for violation of the rules does not exceed the power conferred by § 47. The power to make rules would be vain without the capacity to annex reasonable penalties for their violation. Rules adopted by the constituted authorities for the governance of public schools must be presumed to be based upon mature deliberation and for the welfare of the community. A pupil who

persistently violates such rules, especially after having made express promise to obey them, may be excluded from the school by the school committee acting in good faith. No personal right stands superior to the public welfare in this particular. *Sherman* v. *Charlestown,* 8 Cush. 160, 164. *Spiller* v. *Woburn,* 12 Allen, 127, 128. *Hodgkins* v. *Rockport,* 105 Mass. 475. *Hammond* v. *Hyde Park,* 195 Mass. 29.

No right guaranteed by the Federal Constitution is infringed by the statute as thus interpreted. *Waugh* v. *University of Mississippi,* 237 U. S. 589.

It is not necessary to discuss cases like *Wright* v. *Board of Education of St. Louis,* 295 Mo. 466, relied on by the petitioners, because the rule now in question was authorized by § 47. The statutes from other States cited by the petitioners need not be reviewed. The purport of § 47 is plain as already interpreted. The conclusion here reached is supported in principle by our own decisions already cited. See also *Wayland* v. *Hughes,* 43 Wash. 441; *Ferriter* v. *Tyler,* 48 Vt. 444; *Wilson* v. *Board of Education of Chicago,* 233 Ill. 464.

In each case the entry may be

*Petition dismissed.*