GEORGE LEONARD, JR., & another *vs.* SCHOOL COMMITTEE
OF ATTLEBORO & others.

Bristol. October 8, 1965. — December 7, 1965.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*School and School Committee. Equity Jurisdiction,* Exclusion from
school. *Mandamus.*

G. L. c. 76, § 16, providing a remedy in tort against a town to a child
unlawfully excluded from one of its public schools does not preclude
maintenance by him of an appropriate proceeding to enforce his right
to attend the school. [706–707]

Exclusion of a pupil from a public school because of the unusual length
and style of his hair was not unlawful in that no regulation on the
matter had been formally adopted and promulgated by the school com-
mittee; directives by the school principal verbally and by letter sus-
pending the pupil until he had had his hair cut acceptably and ratifica-
tion of the principal's action by the school committee after a hearing
requested by the pupil and his parents satisfied any procedural re-
quirements. [708–709]

An unusual length and style of the hair of a senior male pupil in a public
high school could reasonably be regarded by the school authorities as
inimical to the maintenance of proper decorum and discipline in the
school and to the proper operation thereof, and action by the authori-
ties suspending the pupil from the school until he had had an "ac-
ceptable haircut" was within the authorities' discretionary powers and
not to be disturbed by the courts, even though the pupil was a profes-
sional musician to whose "image" as a performer and professional suc-
cess the length and style of his hair was essential. [709–711]

A hearing by a school committee respecting suspension of a male pupil
from a school because of the unusual length and style of his hair was
not invalidated by the mere facts that one of the committee members
had placed barber's clippers on the conference table at the outset of
the hearing and that during the course thereof another member insinu-
atingly suggested that the pupil try "different colored wigs." [711]

BILL IN EQUITY filed in the Superior Court on October 24,
1964.

The suit was heard by *Smith, J.,* on a demurrer.

*Edward M. Dangel* (*Ernest I. Rotenberg & Leo E. Sherry*
with him) for the plaintiffs.

*Franklin R. McKay,* City Solicitor, for the defendants.

SPALDING, J.    This is a bill in equity to restrain the members of the school committee of the city of Attleboro, the superintendent of the city's schools, and the principal of the Attleboro High School from preventing the minor plaintiff attending the high school.    All the defendants joined in a demurrer.    From an interlocutory decree sustaining the demurrer and from a final decree dismissing the bill, the plaintiffs appealed.

The case made by the bill is as follows.    George Leonard, Jr. (plaintiff), is a seventeen year old resident of Attleboro.    On September 9, 1964, he attended the opening day of classes at the Attleboro High School where he was a senior.    Two days later the principal, Joseph E. Joyce, Jr., told him that he would have to have his hair cut and that until he had done so he would not be allowed to return to school.    A letter from Joyce to the plaintiff's parents followed, advising them that their son had been suspended from school "until such time as he returns to school with an acceptable haircut."    The letter continued: "School dress regulations do not allow 'extreme haircuts or any other items which are felt to be detrimental to classroom decorum.'"    The plaintiff complied with this order by not returning to school.

Shortly thereafter the plaintiff and his parents requested a hearing before the school committee regarding the suspension.    The hearing was held on September 21, 1964, during the course of which the plaintiff presented his arguments to the committee.    At the outset of the hearing the plaintiff observed a pair of electric barber's clippers which had been placed on the conference table by a member of the committee.    At some stage of the proceedings a member of the committee asked the plaintiff why he did not buy "different colored wigs" in order to satisfy the school authorities.    Ultimately the committee, by a divided vote, sustained the action taken by the principal and notified the plaintiff's parents to that effect.    The plaintiff has not attended classes since that time.[1]

---

[1] At the arguments we were informed that although the bill sought admission to the high school in 1964 the controversy is not moot for the reason that the plaintiff still desires to return to school.

At all times during his attendance at school, the plaintiff has been a conscientious, well behaved, and properly dressed student. Since the age of twelve he has been a professional musician, proficient in playing several instruments and as a vocalist. He has performed at the Newport Jazz Festival, at the New York World's Fair, and numerous other places. For his appearances the plaintiff receives substantial sums of money, and his father (also a plaintiff) has expended large sums in furtherance of his son's musical career. The plaintiff's image as a performer, which is in part based on his hair style, is an important factor in his professional success.

One ground of the demurrer is that G. L. c. 76, § 16, provides an exclusive remedy for persons aggrieved by unlawful exclusion from a public school and thus bars this bill. The relevant portions of § 16 read: "The parent, guardian or custodian of a child refused admission to or excluded from the public schools shall on application be furnished by the school committee with a written statement of the reasons therefor, and thereafter, if the refusal to admit or exclusion was unlawful, such child may recover from the town in tort . . . ."

The statutory history is relevant in determining whether this remedy was intended to be exclusive. In *Spear* v. *Cummings*, 23 Pick. 224, decided in 1839 prior to the statute's enactment, a parent's action against a public schoolteacher for wrongful exclusion was nonsuited by the trial judge. In affirming, the court per Shaw, C.J., held that the parent's only recourse was to the school committee, whose decision would be final. "If, after all, there should be found practically, any danger of an encroachment upon private rights, in a matter in which the whole community have so deep an interest, it is for the legislature to provide more ample and specific security against such danger." P. 227. Six years later St. 1845, c. 214 (the predecessor of G. L. c. 76, § 16), was enacted. In the first case under this statute (*Sherman* v. *Charlestown*, 8 Cush. 160) the court observed that it was probably passed in consequence of the *Spear* decision.

The defendants rely on *Learock* v. *Putnam,* 111 Mass. 499, decided in 1873. That was an action of tort for wrongful exclusion of the plaintiff from school. Assuming that the defendants were members of the school committee, the court upheld the directed verdict for the defendants on the authority of *Spear* v. *Cummings, supra.* The court went on to say, "A proper and sufficient remedy for violation of . . . [the right to attend school] is provided by Gen. Sts. c. 41, § 11 [predecessor of G. L. c. 76, § 16[2]]. We think it was intended and must be held to be exclusive of other remedies." Placing great reliance on this language, the defendants argue that it is dispositive of the plaintiff's right to maintain the present bill. We do not interpret this language so broadly. In the *Learock* case the court had before it an action of tort for damages against persons who were assumed to be members of a school committee. In its context the statement by the court that the statutory remedy against the town was exclusive must be taken to mean that this was the only remedy available for one seeking damages in tort. We do not believe that the Legislature intended to close the door to other appropriate remedies where admission to school, rather than damages, is sought. Few rights are of more importance to our youth than the right to attend our public schools. When one has been unlawfully deprived of that right damages may often be an inadequate remedy. We apprehend that the vast majority of our young would greatly prefer an education to a monetary award for its denial.

The plaintiff seeks injunctive relief, and thus the question remains whether this is a proper remedy to compel his readmission. (For the rule in other jurisdictions, see Annotation 39 A. L. R. 1019.)[3] Mandamus is generally con-

---

[2] The statute interpreted in the *Learock* case was Gen. Sts. c. 41, § 11. Although the language of this section was subsequently changed (Pub. Sts. c. 47, § 12), the word "may" replacing the word "shall," we do not believe that this was intended to alter the meaning or the effect of the statute.

[3] From this annotation it appears that a few courts have held that relief for unlawful expulsion may be obtained by a suit seeking a mandatory injunction. But by the great weight of authority the remedy for readmission is mandamus.

sidered the appropriate remedy when a court is asked to order a school committee to perform duties imposed by law. See *Nourse* v. *Merriam,* 8 Cush. 11 (writ granted to compel admission of a pupil to a public school); *Graves* v. *School Comm. of Wellesley,* 299 Mass. 80, 86; *Quinn* v. *School Comm. of Plymouth,* 332 Mass. 410, 413. However, we need not decide whether a bill in equity may also be maintained for this purpose since, in any event, this plaintiff is not entitled to relief.

General Laws c. 71, § 37, provides that a school committee ". . . shall have general charge of all the public schools, . . . [and] may make regulations as to attendance therein." Moreover, the right of a child to attend a public school is qualified by the school committee's power to make "reasonable regulations as to numbers . . . qualifications . . . and as to other school matters as . . . [it] shall from time to time prescribe." G. L. c. 76, § 5. *Alvord* v. *Chester,* 180 Mass. 20. These provisions have been construed broadly in favor of the school committee. See *Hammond* v. *Hyde Park,* 195 Mass. 29, 30, and cases cited. Thus a school committee may make all reasonable rules and regulations for the discipline, management, and government of the schools, and may exclude a child from school for sufficient cause. *Hodgkins* v. *Rockport,* 105 Mass. 475, 476.

The plaintiff attacks the validity of the rule requiring that male pupils maintain acceptable haircuts on several grounds. One of these is that a school regulation must be formally adopted and publicized by the committee before it may take effect. The law, however, does not thus restrict the manner in which a school committee, school administrators, or teachers shall maintain discipline and decorum in the classroom. *Hodgkins* v. *Rockport,* 105 Mass. 475, 476. Were it otherwise, those in charge of our schools would be virtually unable to cope, on a day to day basis, with the problems of management and discipline to which the unpredictable activities of large groups of children may give rise. As stated in *Hodgkins* v. *Rockport, supra,* at 476: "Much of the power of the committee, as to the preservation of order and the maintenance of discipline, must nec-

essarily be delegated to its different members and the teachers, and must be exercised without any vote or record.'' We hold that the principal's verbal directive, followed immediately by a letter and later by the ratification of the school committee, satisfies any procedural requirements exacted by statute or by considerations of due process.

The main thrust of the plaintiff's argument is that a ruling or regulation which bars a student from attending classes solely because of the length or appearance of his hair is unreasonable and arbitrary, since these matters are in no way connected with the successful operation of a public school. The court's function in reviewing this type of ruling is limited in the light of the broad discretionary powers which the law confers upon a school committee. We will not pass upon the wisdom or desirability of a school regulation. See *Barnard* v. *Shelburne,* 216 Mass. 19, 21. And the fact that the penalty for noncompliance is exclusion from school does not alter our scope of review. *Antell* v. *Stokes,* 287 Mass. 103, 107. As was said in the *Antell* case: ''Rules adopted by the constituted authorities for the governance of public schools must be presumed to be based upon mature deliberation and for the welfare of the community.'' P. 107. Similarly, in cases concerning the expulsion of students for misconduct, it has been held that findings made in good faith by a school committee, that a pupil's behavior so interferes with the discipline and management of the school that his expulsion is necessary, are within its discretion and conclusive. *Hodgkins* v. *Rockport,* 105 Mass. 475, 476. *Watson* v. *Cambridge,* 157 Mass. 561. Here, accordingly, we need only perceive some rational basis for the rule requiring acceptable haircuts in order to sustain its validity. Conversely, only if convinced that the regulation of pupils' hair styles and lengths could have no reasonable connection with the successful operation of a public school could we hold otherwise. See *Pugsley* v. *Sellmeyer,* 158 Ark. 247, 254 (upholding school board regulation prohibiting use of cosmetics by pupils).

We are of opinion that the unusual hair style of the plaintiff could disrupt and impede the maintenance of a

proper classroom atmosphere or decorum. This is an aspect of personal appearance and hence akin to matters of dress. Thus as with any unusual, immodest or exaggerated mode of dress, conspicuous departures from accepted customs in the matter of haircuts could result in the distraction of other pupils.

We are mindful that the regulation of haircuts may affect the private and personal lives of students more substantially than do restrictions regarding dress. Whereas the latter need not operate beyond the school premises, the former will inevitably do so. Therefore the plaintiff contends that the challenged ruling is an invasion of family privacy touching matters occurring while he is at home and within the exclusive control of his parents.

This argument has been advanced before. *Antell* v. *Stokes*, 287 Mass. 103. There a school committee regulation which brought all secret organizations "composed wholly or in part of high school pupils" under the aegis of school authorities was upheld. The court took note, however, that such groups were designed to be operative away from the school premises and outside school hours. It said, per Rugg, C.J., at page 107, "This is not an invasion of the domain reserved exclusively to home and family. Formal associations of pupils in connection with a public school possess possibilities of genuine harm to the reputation of the school and to the studious habits and personal character of the members. These factors intimately concern the general welfare in connection with the public schools." So here, the domain of family privacy must give way in so far as a regulation reasonably calculated to maintain school discipline may affect it. The rights of other students, and the interest of teachers, administrators and the community at large in a well run and efficient school system are paramount.

For the reasons discussed above we reject the plaintiff's contention that even if the regulation is valid, its application to him is unreasonable. It may be conceded that the length and appearance of the plaintiff's hair are essential to his image as a performer, and hence to his ability to fol-

low his chosen profession. But the discretionary powers of the committee are broad, and the courts will not reverse its decision unless it can be shown it acted arbitrarily or capriciously. *Hodgkins* v. *Rockport,* 105 Mass. 475, 476. *Watson* v. *Cambridge,* 157 Mass. 561. *Antell* v. *Stokes,* 287 Mass. 103, 107. The committee could have concluded that, regardless of the detriment to the plaintiff's professional life, only the strictest application of the regulation could ensure its success. We cannot say that its decision was an abuse of power.

The plaintiff also attacks the validity of his hearing before the committee. He alleges that the presence of the barber's clippers and the suggestion of one member that the plaintiff try "different colored wigs" indicate the committee's bad faith and lack of impartiality. A hearing of this sort is quasi judicial in character and must be conducted fairly and impartially. See *Morrison* v. *Lawrence,* 186 Mass. 456, 463; *Carr* v. *Dighton,* 229 Mass. 304, 307; *Sweeney* v. *Young,* 82 N. H. 159. An opportunity to present one's case before an impartial tribunal "actuated by a spirit of judicial fairness" is a minimum requirement. *Morrison* v. *Lawrence,* 186 Mass. 456, 460, 463.

We do not condone the acts of the two committee members which occurred during the plaintiff's hearing. The display of the barber's clippers reveals a regrettable lack of appreciation for the gravity of the hearing. And, while the comment that the plaintiff purchase "different colored wigs" contains the germ of a legitimate suggestion, it was presented in an insinuating manner. Thus the decorum of the hearing is not to be commended. However, the acts complained of were perpetrated by only two members of the committee. Moreover, unlike the situation in *Morrison* v. *Lawrence, supra,* it appears from the bill that the plaintiff was otherwise accorded ample opportunity to present his case. We hold that these isolated incidents did not so infect the proceeding as to vitiate its validity.

The constitutional points suggested in the plaintiff's brief require no discussion.

*Interlocutory decrees affirmed.*
*Final decree affirmed.*