

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

*Sustained by*
*470 SW 2d 727*
*Zexarkana ISD v Lewis*

May 16, 1969

Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
201 East 11th Street
Austin, Texas 78711

Opinion No. M- 395

Re: Clarification of
Attorney General
Opinion No. M-332,
concerning whether
a school district
may suspend a
student for certain
conduct in the ab-
sence of any policy
or rule promulgated
covering such con-
duct.

Dear Dr. Edgar:

This will acknowledge receipt of your request for clarification of the following statement made in Attorney General Opinion No. M-332 (1969):

> ". . . It is noted that prior to November 12, 1968, there was no policy concerning dangerous drugs and narcotics. It is our opinion that the board of trustees would have no authority to expel a student for narcotic-connected offenses occurring prior to that date."

Our research indicates that a student may be sus-pended[1] from school only if he has performed an act which is forbidden by rule, regulation , or statute. An excellent discussion on this subject is contained in a general order, covering judicial standards of procedure

---

[1] In our previous opinion, M-332, the word "expel" was used interchangeably with "suspend." We will use the word "suspend" throughout this opinion in deference to its usage in Article 2904, Vernon's Civil Statutes.

and substance applicable to student discipline in tax
supported schools of higher education. The decision
was handed down by the United States District Court for.
the Western District of Missouri, four federal judges
sitting, and reported in 45 Federal Rules Decisions
133 (Sept. 18, 1968). Following certain definitions
and the outlining of lawful missions of tax supported
schools, this court decision undertakes a discussion
of student discipline. Among other substantive stan-
dards the following appears:

. . .

"An institution may establish
appropriate standards of conduct
(scholastic and behavioral) in
any form and manner reasonably
calculated to give adequate notice
of the scholastic attainments and
behavior expected of the student.

"The notice of the scholastic
and behavioral standards to the
students may be written or oral,
or partly written and partly oral,
but preferably written. The stan-
dards may be positive or negative
in form.

o o o

"In severe cases of student
discipline for alleged miscon-
duct, such as final expulsion,
indefinite or long-term suspen-
sion, dismissal with deferred
leave to reapply, the institu-
tion is obligated to give to
the student minimal procedural
requirements of due process of
law. The requirements of due process
do not demand an inflexible
procedure for all such cases.
'But "due process" unlike some
legal rules, is not a techni-
cal conception with a fixed
content unrelated to time,
place and circumstances.'

-1959-

> Three minimal requirements apply
> in cases of severe discipline,
> growing out of fundamental con-
> ceptions of fairness implicit in
> procedural due process.  First,
> the student should be given ade-
> quate notice in writing of the
> specific ground or grounds and
> the nature of the evidence on
> which the disciplinary proce-
> edings are based.  Second, the
> student should be given an op-
> portunity for a hearing in which
> the disciplinary authority pro-
> vides a fair opportunity for
> hearing of the student's posi-
> tion, explanations and evidence.
> The third requirement is that
> no disciplinary action be taken
> on grounds which are not sup-
> ported by any substantial evi-
> dence.  Within limits of due
> process, institutions must be
> free to devise various types
> of disciplinary procedures rel-
> evant to their lawful missions,
> consistent with their varying
> processes and functions, and
> which do not impose unreason-
> able strain on their resources
> and personnel."

While the above legal standards are held to apply
to educational institutions of higher education, we
believe they are equally applicable in the Texas public
school system, wherein the right to attend school is
assured to all students within certain age limits and
attendance is compulsory until the age of seventeen.

In Corpus Juris Secundum, a discussion of the
"CONTROL OF PUPILS AND DISCIPLINE" appears under Schools
and School Districts, Sections 493 through 503.  In
this discussion, it is made clear that a teacher has many
rights in dealing directly with a pupil and exercising
"parental" discipline at the time of improper conduct,
but that superintendents and principals control teachers;
and school boards must exercise their power by establish-
ing rules, regulations, and policies for the discipline

Honorable J. W. Edgar, Page 4 (M- 395)

and control of pupils.

The general rule is that ". . .the school board which by statute has the general charge and superintendence of the public schools has power to adopt appropriate and reasonable rules and regulations for the discipline and management of such schools, such as a rule requiring that there shall be prompt attendance, diligence in study and proper deportment." 79 C.J.S. 443, Schools & School District, Sec. 494c; Wilson v. Abilene Indep. School Dist., 190 S.W.2d 406 (Tex.Civ.App. 1945, error ref. w.m.); Bozeman v. Morrow, 34 S.W. 2d 654 (Tex.Civ.App. 1931, no writ); McLean Indep. School Dist. v. Andrews, 333 S.W. 2d 886 (Tex.Civ.App. 1960, no writ); and 14 A.L.R. 3d 1201 (Annotation). The authority of school trustees to enforce reasonable rules and regulations by reasonable and proper punishment includes the right to suspend a pupil for persistent violation of rules and regulations. 51 Tex.Jur.2d 620, Schools, Sec. 241; Bishop v. Houston Independent School Dist., 119 Tex. 403, 29 S.W.2d 312 (1930).

Article 2780, Vernon's Civil Statutes, concerning the authority of Independent School District Trustees, directs, in part:

> "Said trustees shall adopt
> such rules, regulations, and
> by-laws as they may deem prop-
> er; and the public free schools
> of such independent district
> shall be under their control;
> and they shall have the exclu-
> sive power to manage and govern
> said schools, . . . "
> (Emphasis added.)

It is thus apparent that the right of a student to attend a public school is qualified by the school trustees' power to make reasonable and necessary rules and regulations, while at the same time such power of the trustees is also qualified by the necessity to make such rules and regulations as it may deem proper.

It is settled law that a student may be refused enrollment for failure to comply with a school regulation banning long hair. Ferrell v. Dallas Indep. School Dist.,

-1961-

261 F. Supp. 545 (Tex), affirmed 392 F.2d 697 (5th Cir.), cert. den. 89 S.Ct. 98 (1968). In the recent case of Leonard v. School Committee, 349 Mass. 704, 212 N.E.2d 468 (1965), upholding the suspension of a student "until such time as he returns to school with an acceptable haircut," the student attacked the action of the School Committee in suspending him because no school regulation had been previously formally adopted and publicized by the Committee. The Court here recognized the need of the Committee to thus meet the fundamental and basic requirements of constitutional due process, yet upheld the Committee's action on the following ground:

> "We hold that the principal's verbal directive, followed immediately by a letter and later by the ratification of the school committee, satisfies any procedural requirements exacted by statute or by considerations of due process."

After careful research, we have been unable to find any authority which would permit a school board to create and enforce a prohibitory rule, regulation, or policy involving suspension from school after the occurrence of the prohibited conduct. Such an effort in our opinion would violate basic and fundamental standards and concepts of due process and would be illegal and not sustainable in court. It is our opinion from the authorities that in the absence of an existing statute which authorizes suspension or expulsion by a school board for the prohibited conduct, a school board must first place into effect some rule, regulation, or policy prohibiting such conduct before it may exercise the power of suspension or expulsion. As pointed out, however, the rule may be general, informal, or even verbal.

In Texas, Article 2904, Vernon's Civil Statutes, makes general provision for the powers of school trustees over pupils: "They /_trustees_/ may suspend from the privileges of schools any pupil found guilty of incorrigible conduct, but such suspension shall not extend beyond the current term of the school."

Article 2898, Vernon's Civil Statutes, further provides, in part, for the disciplining and parole of certain pupils: "Any child within the compulsory school attendance ages who shall be insubordinate, disorderly, vicious or immoral in conduct, or who persistently violates the reasonable rules and regulations of the school which he attends, or who otherwise persistently misbehaves therein so as to render himself incorrigible, shall be reported to the attendance officer who shall proceed against such child in the juvenile court." That statute further provides for a hearing in court by the judge of the court and for a parole of the pupil when found guilty by the court, which is empowered to remove the student from school and commit him to some agreeable and suitable training school.

We hasten to point out that Article 2898 has been held merely to be an "additional remedy" to that possessed by the board of trustees "in enforcing compliance with reasonable rules designed to bring about proper discipline in the public schools of this State." Bishop v. Houston Independent School Dist., 119 Tex. 403, 29 S.W. 2d 312 (1930).

Unless the remedy provided in Article 2898 is followed, apparently the only statute in this State authorizing student suspension which may be utilized, in the absence of rules or regulations on the subject promulgated by the school trustees, is Article 2904, authorizing suspension for "incorrigible conduct." Therefore, absent a school policy, rule or regulation, the only basis for suspension of a student would be on the statutory ground of incorrigible conduct, which is defined in law as "Incapable of being corrected, amended, or improved; with respect to juvenile offenders, unmanageable by parents or guardians." Black's Law Dictionary, Fourth Ed., p. 907; Shinn v. Barrow, 121 S.W. 2d 450, 451 (Tex. Civ.App. 1938, writ dism.); Ex parte Roach, 87 Tex.Crim. 370, 221 S.W. 975, 976 (1920); People v. Purcell, 70 Colo. 399, 201 P. 881 (1921); Mahaffey v. Mahaffey, 176 Miss. 733, 170 So. 289, 292 (1936); Kahm v. People, 83 Colo. 300, 264 P.718,719 (1928); In re Parker, 118 La. 471, 43 So. 54, 55 (1907); In re Hook, 95 Utah 497, 115 A.730, 733 (1922).

In narcotic-connected cases, often the sole act of mere possession or the mere use in a single instance is made a criminal offense. See Article 725b, Section 2(a), Vernon's Penal Code. Yet being guilty of such an offense, even by final judgment of conviction, does not render a student, as a matter of law, guilty of "incorrigible conduct," within the legal definition as above set out, so as to authorize suspension of the student from school. This, therefore, was the basis of our statement in Attorney General Opinion No. M-332 (1969) that since there was no school policy, rule, or regulation concerning drugs or narcotics prior to the date mentioned, the board of trustees was without authority to expel a student for the mere violation of the narcotics law, whether found guilty by a court or by school authorities. Of course, if the particular violation was based on a finding of habitual possession, sale, or use, etc., such as to render the person guilty of incorrigible conduct, then there would be a basis to suspend the student.

In view of the foregoing considerations and in order to clarify this matter, we conclude that the Board of Trustees is without authority to suspend a student for any act or conduct unless prior thereto the Board has placed in effect a rule, regulation, or policy generally covering such act or conduct or unless the act or conduct constitutes "incorrigible conduct" in violation of Article 2904. The disciplinary policy, rule, or regulation may be a general one, or informal, or even verbal, so long as it fairly apprises the student of the type of prohibited conduct for which he may be suspended from school. As stated next above, the disciplinary policy, rule or regulation may be a "general one." To illustrate: A school policy, rule or regulation that provides for the suspension of a student who violates the Penal laws of Texas, of the grade of a felony, would authorize the suspension of a student who is guilty of violating our penal laws relative to narcotic drugs. Article 725 b, V.P.C.

## SUMMARY

The School Board of Trustees is without authority to suspend a student for any act or conduct unless, prior thereto, the Board has promulgated a rule, regulation, or policy generally covering such act or conduct for which the student is subject to being suspended or unless the act or conduct constituted "incorrigible conduct" in violation of Article 2904, Vernon's Civil Statutes. Such rule, regulation or policy may be informal, preferably written but may be verbal, so long as it fairly apprises the student of the type of prohibited conduct for which he may be suspended from school.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Howard M. Fender
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
Bill Allen
John Banks
Robert Darden
Tom Bullington

W. V. Geppert
Staff Legal Assistant

Hawthorne Phillips
Executive Assistant