## Seville v. West Shore School District

*Keith B. Quigley,* for plaintiff.
*James K. Arnold,* for defendant.

WEIDNER, J., April 14, 1970.—Complaint in equity was filed by plaintiff, Jerome Davitt Seville, by his guardian, David W. Seville, 2d, against defendant, West Shore School District, for a permanent injunction to enjoin defendant from suspending plaintiff from attendance at school because of violation of guidelines or regulations established by the school board regarding hair grooming.

Minor plaintiff is an 18-year-old student at Cedar Cliff High School, Camp Hill, Pa., operated by defendant, West Shore School District. He was suspended for violation of the regulations regarding hair grooming in that his hair (sideburns) was three-quarter inches longer than the regulations permitted. This action followed and minor plaintiff was reinstated in school pending determination of this case.

### ISSUE RAISED

Are the regulations promulgated by the West Shore School District Board of Directors, regulating male students' hair grooming, valid?

### FINDINGS OF FACT

1. Plaintiff is a minor individual, age 17 at the time of the filing of the suit, now age 18, and resides

at 107 Yellow Breeches Drive, Fairview Township, York County, Pa.

2. Plaintiff is a student at Cedar Cliff High School, situate in Lower Allen Township, Cumberland County, Pa.

3. The guardian of plaintiff is his father, David W. Seville, 2d, with whom plaintiff resides.

4. Defendant is West Shore School District, organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal offices in Cumberland County at 33 North Eighth Street, Lemoyne, Cumberland County, Pa.

5. Defendant was formed July 1, 1966, by reorganization and encompasses in Cumberland County, Wormleysburg Borough, Lemoyne Borough, New Cumberland Borough and Lower Allen Township, and in York County, Goldsboro Borough, Lewisberry Borough, Fairview Township and the northern portion of Newberry Township.

6. On or about September 22, 1969, the board of directors of defendant caused to be enacted certain guidelines regulating grooming with respect to hair of male students in the school district.

7. Said guidelines are as follows:

A. Hair shall not be longer on the forehead than the line established by the eyebrows.

B. Hair on the back of the head will not fall below the top of a dress shirt collar.

C. Hair on the side of the head shall not cover the ears.

D. Sideburns shall not extend below the level of the ear lobe.

E. Beards and mustaches are disallowed.

8. Administrative officials within the district were charged with enforcing the said guidelines.

9. Cedar Cliff High School is a school within the school district subject to the authority of the Board of School Directors.

10. On or about September 23, 1969, plaintiff was suspended from classes from Cedar Cliff High School by the administration of said school for violating the said grooming guidelines.

11. Subsequent to said suspension, plaintiff appealed to the Board of School Directors and after hearing October 7, 1969, said board affirmed the action of the administration and sustained the suspension.

12. After the filing of this suit, plaintiff was permitted to return to school October 10, 1969, pending the outcome of this litigation.

13. Defendant has 5,000 junior and senior high school students contained in five buildings.

14. Defendant has a low teacher turnover and there is no shortage of teachers.

15. The student population of Cedar Cliff High School is 1,580.

16. Defendant has always had general hair and grooming regulations as promulgated in its administrative and school handbooks; these regulations have been reviewed annually and modified to adjust to changing times and styles.

17. Defendant's recently promulgated hair guidelines were part of a comprehensive set of regulations which established standards of dress, general appearance and conduct.

18. Specific hair guidelines were satisfactory to the school administration which felt them necessary.

19. Similar hair guidelines are in force in surrounding school districts.

20. Plaintiff was, by his own admission and as a matter of fact, in clear, willful violation of the hair guidelines at the time of his suspension and at the time of the hearing.

21. Plaintiff has violated the hair guidelines because he wants to and for no other reason.

22. Plaintiff violated the hair guidelines with his father's consent.

23. Compliance with hair guidelines would in no way detrimentally affect plaintiff.

24. Plaintiff violated and continues to violate the hair guidelines by maintaining his sideburns three-quarters of an inch below his ear lobes.

25. At the time of his suspension and at the time of trial, plaintiff's academic performance and standing was substantially below average.

26. Plaintiff has failed to make up school work missed during his suspension and was offered the opportunity to do so.

27. Plaintiff has violated other reasonable school rules and regulations.

28. Only a few students violated the hair guidelines in September of 1969, which number has increased to a small minority of 15 to 50 students as of the time of hearing, and this deterioration in the general appearance of students is not conducive to maintaining the best educational climate.

29. The violation of the hair guidelines has created distraction by increasing comments and discussion among the students.

30. Violations of hair guidelines result in distraction and disruptive incidents in the classrooms, hallways and meetings.

31. The school board meeting of September 18, 1969, was disrupted by the unanticipated arrival of approximately 100 students who came for the purpose of complaining about hair guidelines.

32. School district teachers think hair guidelines are necessary to prevent distractions.

33. Violations of hair guidelines affect teachers' ability to teach.

34. Necessary rules and regulations are important to good educational climate.

35. Extreme length or styles of hair are disruptive.

36. Length of hair is conduct or is related to conduct.

37. The educational climate in defendant district is deteriorating as a result of the violation of hair guidelines.

38. Reasonable guidelines for hair, general appearance and conduct are in the best interests of the students, teachers and administrators in defendant district to provide the best educational climate and prevent its deterioration.

39. The educational process is best served by reasonable rules and regulations established in the sound judgment of school board directors and administrators taking into consideration each district's particular requirements and problems, and that judgment should not be superseded.

40. Defendant's guidelines for hair, dress and general appearance are reasonable and necessary for the orderly educational program of instruction and training of students.

## DISCUSSION

The record in this case shows that the West Shore Senior High School Board, after years of promulgating general rules and regulations on dress and grooming, in September 1969, promulgated specific rules and guidelines, because of the recognized need of such to provide the maximum educational benefit for the students. They, as duly elected representatives of the citizenry, recognized the danger and the need for action. All are dedicated, all are familiar with the desires of the citizenry, the needs for an educational atmosphere, and the trends of our times. This is borne out by the reputation of the school, the functioning of the school and the lack of protest or disruption either by students or parents heretofore—even the student failing in the swim of life or the parent refusing to

participate in the educational process in the area or support it, but satisfied to be a Monday-morning quarterback—or worse, an instigator of disruption. The quality of education at Cedar Cliff High School has been tested and regarded here and elsewhere as one of the best. This is due to the dedication of the administration and board members to the cause of education and the youth of the area. Now, this lawsuit is proving that it takes the parent-Monday-morning-quarterback longer to second guess the quarterback school directors than it does to play the game, and with more disastrous and far reaching effects, because, for the other quarterbacks there will be another game, but for the second guessing parent, his child may not reach another game, having tasted the sweet wine of protest against regulations and having a come-late model in his father.

The record in this case shows that plaintiff, Jerome Davitt Seville, has ability and intelligence, but has not used it to the maximum, which is not, at his age, unusual or disastrous. In fact, he displayed his intelligence and his having potential when he said he would comply with the regulation in order to complete his education. But then the super-educator supplanted his intellect and judgment for that of the one being educated and his father, David W. Seville, 2d, instituted this action. We could only surmise what accomplishments this student would have gained, had he and Mr. Zitto, the school principal, gone through with their bargain and established in the young man a sense of achievement had not the father interceded. Instead, we have now a tug-of-war between the school and the student, with the father of the student ineptly pulling the rope for the student.

The record shows the regulation is reasonable and necessary.

The senior plaintiff, David W. Seville, 2d, testified that the school has a right to rule against indecent

clothing or behavior. This admits that distractions or disruptions may be prohibited.

Plaintiff's witness, Robert Pavlovich, physical education and health teacher and coach, testified that some students who violate the grooming guidelines, here involved, do cause him to be distracted and not able to teach his subject. Also, that the situation has worsened since September 23, 1969, when the guidelines were suspended, both in number of students and extremes of hair style. Remarks in halls have increased. If the school had no such regulations and he had authority, he would impose them.

Mr. Pavlovich feels that the regulations in effect are necessary.

Mrs. Carol Diffenderfer, plaintiff's witness and English teacher, testified that, generally speaking, most of them (students) seemed to be in favor of some sort of guidelines.

Plaintiff's witness, Gary Boose, testified that he had heard teachers and students discussing long hair in hallways.

Frederick Howard, teacher and a witness for plaintiff, testified there have been disruptive incidents. He said he is not distracted himself by hair styles but other teachers said they would be distracted.

All those witnesses were witnesses for plaintiff, but all their testimony proves the need for reasonable regulations such as were adopted by the board.

In addition, all defendant's witnesses, Dr. Harold Hench, Superintendent; John A. Johnson, Director of Secondary Education; Louis Edwards, Principal for Secondary Education at Cedar Cliff, and James Hager, Esq., President of the Board of School Directors, testified to the wisdom and necessity for the regulations adopted by the board.

In legal terminology, much has been argued regarding disrupting or distracting. We need not engage

in semantics and compare distraction with disruption. Any distraction of the mind in thinking is a disruption of the educational process in some degree. And any distraction from teaching in the classroom is a disruption of education. Any distraction in the halls, gym or auditorium or elsewhere on school property is a disruption or break of the educational process. Some we countenance as needed diversion or relaxation. Others we condemn as disruptive or diversionary. Thus, distraction or diversion of the educational process when in operation is disruptive. The educational process functions in the classroom basically, but also in the halls, the gym, the auditorium and even the parking lot to some extent. So that anything which distracts, disrupts, as to education.

Although the appellate courts in Pennsylvania have not ruled on the subject, there is ample authority in other jurisdictions sustaining hair-grooming regulations.

Leonard v. School Committee of Attleboro, 349 Mass. 704, 212 N. E. 2d 468, is cited as authority for, and as sustaining, hair-grooming regulations in the schools. However, this case does not even consider the constitutional issues.

In Davis v. Firment, 269 F. Supp. 524 (1967), the United States District Court in Louisiana sustained hair-grooming regulations in the schools. The district court held that extreme hair styling falls within that type of expression which is manifested through conduct and is, therefore, subject to reasonable State regulation in furtherance of a legitimate State interest.

In Ferrell v. Dallas Independent School District, decided by the United States District Court in Texas, 261 F. Supp. 545 (1966), affirmed by the United States Court of Appeals, Fifth Circuit, 392 F. 2d 697, certiorari refused by the United States Supreme Court,

393 U. S. 856, 89 S. Ct. 98, 21 L. Ed. 2d 125, hair-grooming regulations in school were sustained. The court stated:

". . . We cannot say that the requirement that appellants trim their hair as a prerequisite to enrollment is arbitrary, unreasonable or an abuse of discretion. Therefore, the school regulation as promulgated by the principal, banning long ' hair, is not violative of the state constitution or statutes. . .

"The compelling reason for the State infringement with which we deal is obvious. The interest of the state in maintaining an effective and efficient school system is of paramount importance. That which so interferes or hinders the state in providing the best education possible for its people, must be eliminated or circumscribed as needed. This is true even when that which is condemned is the exercise of a constitutionally protected right."

Hair-grooming guidelines or regulations were also sustained in Marshall v. Oliver, B-2932, Circuit Court of the City of Richmond, sustained by the Supreme Court of Appeals of Virginia and certorari denied by the United States Supreme Court, 383 U. S. 945, 87 S. Ct. 319.

In Akin v. Riverside Unified School District Board of Education, 262 Cal. App. 2d 161, 68 Cal. Rep. 557, the court sustained hair-grooming rules in the matter of a 15-year-old student who grew a beard. The school defense was that a good educational climate was desired and no disruptions. There had been no disruptions. The court found there was evidence that:

"The administrative policy of the school board was the result of the considered judgment of a number of persons who were experienced in the field of education; it was the opinion of administrative and teaching experts that the wearing of a beard would be definitely

disruptive of the educational process; such a disturbance would have a prejudicial effect on the educational environment and adverse effects on other students; the academic system and maintenance of discipline were best served when there were no such influences; proper classroom atmosphere and decorum flourished where such influences were not present."

This language can be favorably compared to the testimony of all the witnesses in the present case.

In Crews v. Cloncs, 303 F. Supp. 1370, the Federal District Court of Indiana, decided September 17, 1969, refused an injunction and upheld a regulation which required that hair length was to be "above the collar, above the ears and out of the eyes." This 16-year-old public school student sought redress under the Civil Rights Act of 1964 and the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth amendments. The sole reason plaintiff was suspended was his shoulder length hair and there was no other disciplinary complaint. His high school had 3,000 students and there had been 12 hair violations. The school authorities stated unequivocally that unusual hair styles, such as long hair, disrupt a classroom atmosphere, impede decorum, cause disturbances among other students in attendance and result in distraction of other students so as to interfere with the educational process in the high school. The court did not desire to interfere with school rules and regulations and did not propose to substitute its judgment for the school board and administrators without a definite and clear constitutional violation.

The district court recognized the interest of the State in maintaining an orderly and efficient school system and academic atmosphere in which knowledge can be peacefully transmitted to the pupils, and then said:

"To require the school authorities to attempt to carry out the educational function in an atmosphere of turmoil and disruption would be ludicrous; hence, conduct which has the effect of bringing about disruption, whether intending that effect or not, may constitutionally be proscribed within reason."

In Brick v. Board of Education, Federal District No. 1, Denver, Colorado, 305 F. Supp. 1316, the Colorado District Court on November 7, 1969, sustained the suspension of a 19-year-old senior who would not comply with the dress code, which said that:

". . . hair must not be in the eyes, over the ears, or over the collar. Sideburns cut at bottom of ear."

The court follows the usual statutory and constitutional construction in refusing to substitute itself as a reviewing body for school board discretion unless there has been an abuse thereof. The evidence in the case showed that the dress code was intended to prevent disruptions and distractions. The court said:

"Nor can the constitutionality of the dress code provisions here in question be determined merely by a finding that John Brick was or was not a discipline problem or a disruptive influence. The reasonableness of this regulation must be considered in light of the overall situation at South High School and the evidence which showed a substantial need for such a measure.

"On the basis of all of the evidence it is impossible to conclude that the regulation is unreasonable. . . ."

In Stevenson v. Wheeler County Board of Education, 306 F. Supp. 97, decided December 17, 1969, by the District Court in Georgia, the court upheld a clean-shaven regulation and good grooming policy.

The court stated:

"Among the things a student is supposed to learn at school (at least, such is my idea), is a sense of discipline.

Of course, rules cannot be made by authorities for the sake of making them but they should possess considerable leeway in promulgating regulations for the proper conduct of students. Courts should uphold them where there is any rational basis for the questioned rule. All that is necessary is a reasonable connection of the rule with the proper operation of the schools. By accepting an education at public expense pupils at the elementry or high school level subject themselves to considerable discretion on the part of school authorities as to the manner in which they deport themselves. Those who run public schools should be the judges in such matters, not the courts. The quicker judges get out of the business of running schools the better. I have no intention of becoming a tonsorial or sartorial consultant of boards, superintendents and principals. Except in extreme cases the judgment of school officials should be final in applying a regulation to an individual case.

"Counsel for plaintiffs makes much of the fact that the existence of facial hair growth of a student has never created any incidents or commotion in the Wheeler school system and that the regulation requiring shaving is therefore without basis in reason and is arbitrary. The mere fact that a particular hair style or hirsute growth on one's face has not created a classroom disturbance is not conclusive of its unreasonableness. Students wearing mustaches or beards in a high school may be a distracting influence on a student body which does not wear them. Teachers have a right to teach in an atmosphere conducive to teaching and learning and unkempt faces do not contribute much to it. I find the regulation under attack reasonable and not arbitrary. It was adopted in good faith and is not racially oriented."

If and when the time arrives when the extremists are willing to serve, and able to be elected by majority vote,

they should then serve, change the rule and others will abide with their rules. But until then, the community has declared its approval of those now dedicated to an educational system free of extremes and proven efficient by the test of time. The best evidence of the rejection of plaintiff's position in the school and community is that his own witnesses testified adversely to him: that disruption or distraction exists, is detrimental, and in the absence of such regulations, they would be imposed by the teacher.

## CONCLUSIONS OF LAW

1. Defendant's guidelines, which are the subject of this suit, are a reasonable, necessary and lawful exercise of the school board's power to regulate students' conduct under the laws of the Commonwealth of Pennsylvania.

2. Said guidelines and their enforcement do not violate any constitutional rights of plaintiff or any provisions of the United States Constitution or the Constitution of the Commonwealth of Pennsylvania.

3. The educational process is best served by reasonable rules and regulations established in the sound judgment of school board directors and administrators taking into consideration each district's particular requirements and problems, and that judgment should not be superseded.

4. The power of the court to issue an injunction should be exercised with great caution and only where reason and necessity are clearly established.

5. The regulations imposed by the West Shore Senior High School Board are reasonable, necessary and valid.

6. The suspension by the school board of plaintiff is lawful.

7. No relief may be granted.

8. Plaintiff's complaint must be dismissed.

### DECREE NISI

And now, April 14, 1970, at 9 a.m. (EST), plaintiff's complaint in equity is dismissed.

The Prothonotary of Cumberland County is directed to file this adjudication, enter the within decree nisi, give notice to the parties or their counsel of record as provided by the rules of equity practice in Pennsylvania, and unless exceptions are filed to this decree nisi within 20 days after said notice, this decree shall be entered as a final decree by the prothonotary.