Agnes, A.J.
INTRODUCTION
This civil action is brought by the father of Adam Doe, a minor, against the Winchendon School Committee to obtain a preliminary injunction allowing Adam to return to school from a suspension.
FACTUAL BACKGROUND
The essential facts are not in dispute. During the 2003-04 school year, Adam Doe was a student in the eleventh grade at Murdock Middle-Senior High School in Winchendon, MA. Bomb threats had been made against the school several times during the school year, and it was in this context in which the incident at hand occurred. On March 29, 2004, a bomb threat was made against the school and caused the administration to evacuate the building. Later that day, a memorandum from the Assistant Principal was circulated to all students regarding the discovery of the bomb threat earlier in the day and the resulting evacuation. After receiving this memorandum in his U.S. History class, Adam wrote a note on the back of the memorandum and passed it to a fellow student. The note read, “A Bomb will not go off between the hours of 7:28 am and 2:00 pm, do not evacuate the school. Nothing will happen, do you understand.” The note was left in the classroom by the fellow student and upon discovering it the next morning, another student handed it in to the classroom teacher. The teacher subsequently gave the note to the school administration.
Soon after the administration received the note, Adam was called to the principal’s office. Adam admitted to writing the note, claiming that it was written as a joke and that he thought it had been thrown away. The Principal immediately suspended Adam for five days, pending the outcome of the investigation. Written notice by Principal Washburn was sent to Adam’s father regarding the incident and resulting suspension. The school resource officer also notified the Winchendon Police Department of the incident, and subsequently delinquency proceedings were initiated in juvenile court.[2] Two days were added on to the original suspension prior to Principal Washburn granting a hearing, which was held on April 8, 2004. Following the hearing, Principal Washburn sent a letter to Adam’s father on April 16 informing him she had determined that Adam’s presence in the school would have a substantial detrimental effect on the general welfare of the school. Therefore, she opted to suspend Adam for the duration of the juvenile proceedings, pursuant to G.L.c. 71, §37Hl/2.
On April 18, 2004, Adam’s father, David Doe, requested a hearing before the superintendent, as is mandated by G.L.c. 71, §37Hl/2. At this hearing, held on May 3, 2004, Adam and Mr. Doe, through their attorney, requested that Superintendent O’Meara overrule Principal Washburn’s decision to suspend Adam until the completion of the juvenile proceedings. On May 7, Dr. O’Meara sent a letter to Adam and his father informing them that he was upholding Principal Washburn’s decision. Adam and Mr. Doe filed a motion for a preliminary injunction. As of the plaintiffs motion for a preliminary injunction, heard on June 9, 2004, Adam’s suspension remained in effect.[3]
DISCUSSION
Adam Doe was suspended under the authority of G.L.c. 71, §37Hl/2, which states, in relevant part:
Upon the issuance of a criminal complaint charging a student with a felony . . . the principal or headmaster of a school in which the student is enrolled may suspend such student for a period of time determined appropriate by said principal or headmaster if said principal or headmaster determines that the student’s continued presence in school would have a substantial detrimental effect on the general welfare of the school.
(Emphasis added.)
A. Likelihood of Success on the Merits
The first prerequisite the plaintiff must establish in order to be granted a preliminary injunction is to demonstrate a likelihood of success on the merits. See Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). Courts give deference to educational administrators in similar circumstances. See Doe v. Superintendent of Sch. of Stoughton, 437 Mass. 1, 5 (2002) (according substantial deference to school officials in matters of educational discipline); see also Blackburn v. Snow, 771 F.2d 556, 562 (1st Cir. 1985), quoting Bell v. Wolfish, 441 U.S. 520, 547-48 (1979) (citations omitted) (noting that “prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security”).
In Nicholas B. v. Sch. Comm, of Worcester, the Court rejected a student’s challenge to his expulsion, specifically noting, “School committees have wide discretion in school discipline matters.” 412 Mass. 20, 21 (1992). The Court made the same observation in Doe v. Superintendent of Schools of Stoughton, rationalizing the importance of granting substantial deference to school officials in matters of discipline by noting that “school officials are in the best position to determine when a student’s actions threaten the safety and welfare of other students.” See Doe, 437 Mass, at 5.[4]
Plaintiff must be able to demonstrate that the school district acted arbitrarily or capriciously in determining that his presence would have a substantial *55 detrimental effect on the general welfare of the school. Nicholas B., 412 Mass, at 21-22; Leonard v. Sch. Comm, of Attleboro, 349 Mass. 704, 711 (1965). In Leonard, a student brought a claim against the school committee to appeal his suspension for violating a rule requiring an acceptable haircut in a public high school. See 349 Mass, at 705. The Court upheld the school’s decision, noting, “We need only perceive some rational basis for the rule requiring acceptable haircuts in order to sustain its validity.” See id. at 709. Based on the broad discretion granted to school officials by the Legislature under G.L.c. 71, §37Hl/2, there are only veiy limited circumstances in which a principal or headmaster’s decision to suspend a student could be overturned so long as the student has a felony charge pending. See Doe, 437 Mass, at 6 (“we will affirm the superintendent’s decision if it is rational”).
Adam was afforded more than the requisite opportunities to explain his actions and make his case for why he should be reinstated. After the non-mandatoiy hearing granted by the Principal, and the mandatoiy hearing in front of the Superintendent, the school administrators decided that Adam should be suspended under G.L.c. 71 §37Hl/2. The members of the educational administration in Winchendon have more experience with the day-to-day operations of the school system and the effect that the current situation may have on such operations. Adam’s actions, taken in the context of prior bomb scares, and his apparent lack of contrition for his actions lead the Court to conclude that it is conceivable that the Superintendent could have determined that Adam’s presence in school would have a “substantial detrimental effect on the general welfare of the school.” Thus, it cannot be said that the Superintendent’s decision was arbitrary, capricious, or irrational. See Leonard, 349 Mass, at 711, Nicholas B., 412 Mass, at 21-22. As the Court stated in Doe, “It is not the place of a reviewing court to substitute its own opinion for that of the superintendent. We will affirm the superintendent’s decision if it is rational.” See 437 Mass, at 6.
In addition to challenging the decision of the Superintendent, the plaintiff also claims that the school system has deprived him of his constitutional right to free speech. It has been established that students do not “shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.” Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969). Indeed, the Legislature has incorporated the students’ right of free expression into the General Laws. G.L.c. 71, §82 (“The right of students to freedom of expression in the public schools of the commonwealth shall not be abridged, provided that such right shall not cause any disruption or disorder within the school”). However, the Court has made clear that protection for student speech in school is not unlimited. Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675 (1986). A balance must be struck between the student’s rights to free speech and the school’s role in fostering “socially appropriate behavior.” S.G. v. Sayreville Board of Education, 333 F.3d 417, 422 (3rd Cir. 2003), quoting Fraser, 478 U.S. at 681. The school administrators determined that the character of Adam’s speech in this case went beyond the realm of political or expressive speech and interpreted the note as a threat to the safety of the students, teachers, and employees of the school. Due to the threatening nature and the potential consequences of the content of the note, which was written in the context of a series of bomb threats against the school, the constitutional inquiry tilts in favor of the discretionary decision-making of the school officials. Therefore, Adam’s First Amendment rights were not violated. See Pyle v. Sch. Comm. of South Hadley, 423 Mass. 283 (1996).
In light of the above discussion, there is not a substantial likelihood that the plaintiff would prevail on the merits of the case.
B. Irreparable Harm
The second element the plaintiff must demonstrate in order to obtain a preliminary injunction is that, without the order, he will be irreparably harmed. See Packaging Indus., 380 Mass, at 616. In this case, the preliminary injunction hearing was held with approximately 5 days left in the academic year at Murdock Middle-Senior High School. Adam had already been out of school for approximately 6 weeks; thus, it would be difficult to argue that missing the last 5 days in addition would cause “irreparable harm.” Although Adam’s ability to successfully participate in the college application process is certainly a concern for all parties involved, attending the final 5 days of school is not likely to be a determining factor in that process. Having already missed 6 weeks of school, without any organized program for keeping up with classwork at home, it would be unfair to expect Adam to take his final exams with the rest of his class during those final days of school.
The Superintendent provided alternate schooling provisions in his May 7 letter explaining his decision. He offered that the Winchendon School System would work with Adam in order to approve a home-school plan; however, neither the student nor his father has contacted the school system about exercising this option. Accepting this option would have helped ameliorate the difficulties that the student asks the Court to remedy. In addition, if for some reason the juvenile proceedings continued through the summer, the Superintendent indicated in his letter that he and the Principal would be willing to discuss readmission for the fall.
Since it is unlikely that, without a preliminary injunction, Adam will suffer irreparable harm, the motion should not be granted. See Packaging Indus., 380 Mass, at 616.
*56 CONCLUSION
The request for a preliminary injunction in this case should only be granted if the Superintendent and the Principal were arbitrary or capricious in determining that Adam’s presence would have a substantial detrimental effect on the general welfare of the school. Based on the facts of the case, in particular the repeated bomb threats and Adam’s apparent lack of remorse for his actions, this Court concludes that the decision of the school administrators to suspend Adam pursuant to G.L.c. 71 §37Hl/2 was not arbitrary or capricious, but was made by knowledgeable and experienced administrators seeking to find the best solution for the school system as a whole to a chronic pattern of disturbing bomb threats.
ORDER
For the reasons set forth above, the plaintiffs motion for preliminary injunction is DENIED.

There is a distinction between “criminal” and “juvenile” proceedings that is significant in some contexts. G.L.c. 119, §53 (proceedings against juveniles are not regarded as criminal) ; G.L.c. 263, §4 (prescribing different modes of procedure for adults and juveniles in criminal cases). It appears that when the Legislature refers to “a student charged with a felony" in G.L.c. 71, §37Hl/2, it sought to encompass students whether under the age of 17 or not as long as the offense with which they are charged, if committed by an adult, would be a felony, i.e., a crime punishable by imprisonment in state prison. G.L.c. 274, §1. Here, the parties do not dispute that the juvenile is charged with a felony grade offense.

following the hearing on June 9, 2004, the Court informed the parties that an injunction would not be granted. This decision is a memorialization of the reasons for that ruling.

The high level of deference granted to school officials across the country can be seen through the decision in S.G. v. SayreviUe Board of Education, where the court upheld the suspension of a kindergarten student who told several classmates “I’m going to shoot you” while playing cops and robbers at recess in the school yard. See 333 F.3d 417, 418-19 (3rd Cir. 2003). Although the young boys were only playing a game, the Court upheld the school administrator’s decision because “the determination of what manner of speech is inappropriate properly rests with the school officials.” See id.